228 P.3d 1270 (2010)
In the Matter of the Parentage of M.F.
John Corbin, Respondent,
v.
Patricia Reimen, Appellant.
No. 81043-5.
Supreme Court of Washington, En Banc.
Argued March 10, 2009.
Decided April 1, 2010.
*1271 Patricia S. Novotny, Attorney at Law, Seattle, WA, James Davis Shipman, Podrasky, Shipman & Shields, Everett, WA, for Petitioner.
Catherine Wright Smith, Valerie A. Villacin, Edwards, Sieh, Smith & Goodfriend, P.S., Seattle, WA, for Respondent.
Sarah A. Dunne, ACLU, Nancy Lynn Talner, Attorney at Law, Roger Ashley Leishman, Davis, Wright, Tremaine, L.L.P., Seattle, WA, for Amicus Curiae on behalf of ACLU.
David J. Ward, Legal Voice, Janet Marie Helson, Skellenger Bender, P.S., Seattle, WA, for Amicus Curiae on behalf of Northwest Women's Law Center.
C. JOHNSON, J.
¶ 1 This case asks us to decide whether the common law de facto parentage doctrine, recognized in In re Parentage of L.B., 155 Wash.2d 679, 122 P.3d 161 (2005), extends to a stepparent/stepchild relationship. The Court of Appeals declined to extend the doctrine in this case. We affirm the Court of Appeals and hold that the de facto parentage doctrine does not apply under the circumstances present in this case.

FACTS
¶ 2 On December 15, 1993, M.F. was born to Patricia Reimen and Edward Frazier. Reimen and Frazier separated not long after M.F. was born, and their divorce was finalized in 1995. Their parenting plan granted primary residential custody to Reimen, and Frazier had alternating weekends and some holidays. Frazier has regularly met his child support obligations. Although Reimen and Frazier have not always followed the residential schedule set forth in the parenting plan, the plan has never been modified by a court. There have been no allegations that either Reimen or Frazier are "unfit" parents.
¶ 3 Soon after Reimen's and Frazier's separation, when M.F. was about 14 months old, Reimen and Corbin began dating. They married in 1995 and had two sons. Reimen and Corbin separated in 2000 and divorced in 2002. Their parenting plan granted custody of the two boys to Corbin about 45 percent of the time but the plan did not apply to M.F. However, M.F. usually accompanied the boys when they visited their father. Corbin later remarried a woman with two daughters of her own.
¶ 4 In this action, commenced almost three years after the dissolution of Reimen's and Corbin's marriage, Corbin moved to modify the parenting plan with Reimen, which governed their sons. From that point forward, M.F. stopped accompanying her brothers to Corbin's house. Reimen and Corbin dispute why M.F. stopped seeing him.
¶ 5 In November 2005, we announced our recognition of the de facto parentage doctrine in In re Parentage of L.B. In March 2006, Corbin petitioned to be named M.F.'s *1272 de facto parent and sought residential time with her based primarily on L.B. Pursuant to CR 12(b)(6), Reimen moved to dismiss the petition. The trial court denied Reimen's motion and ruled that Corbin had presented a prima facie case. Reimen sought discretionary review with the Court of Appeals, which reversed. In re Parentage of M.F., 141 Wash.App. 558, 561-62, 170 P.3d 601 (2007). We accepted review. 163 Wash.2d 1052, 187 P.3d 752 (2008). The American Civil Liberties Union of Washington and the Northwest Women's Law Center filed amicus briefs.

ANALYSIS
¶ 6 This case comes before us on a CR 12(b)(6) motion to dismiss presenting only a question of law, whether a stepparent may acquire de facto parent status when the child has two fit parents. We review this question de novo. King v. Snohomish County, 146 Wash.2d 420, 423-24, 47 P.3d 563 (2002).
¶ 7 This case requires us to examine our holding in In re Parentage of L.B. and decide whether the doctrine of de facto parentage should extend to the facts before us in this case. In L.B., the petitioner and respondent were involved in a long-term, committed same-sex relationship. They agreed to conceive a child with the intention of forming a family, and the petitioner gave birth. The parties shared parenting responsibilities for the child and held themselves out to the public as a family. Unlike most parents, however, the respondent, Carvin, had no legal parental status. After the relationship ended when L.B. was six years old, the petitioner terminated Carvin's contact with L.B., and Carvin then filed suit to establish her legal parental rights.
¶ 8 In our opinion, after discussing and analyzing various statutory provisions, we concluded that no statutory means existed by which the respondent could establish her parental status, and we found it necessary to fashion a common law remedy. We created this remedy to "fill the interstices that our current legislative enactment fails to cover in a manner consistent with our laws and stated legislative policy." L.B., 155 Wash.2d at 707, 122 P.3d 161. We concluded that a common law remedy is available when, in the absence of applicable statutes, the court is called upon to "`administer justice according to the promptings of reason and common sense. . . .'" L.B., 155 Wash.2d at 689, 122 P.3d 161 (quoting Bernot v. Morrison, 81 Wash. 538, 544, 143 P. 104 (1914)). Taking into account the original intent and agreement of the parties and the lack of a statutory remedy, we fashioned a remedy to fulfill the parties' agreement. But the factors prompting us to recognize a remedy in L.B. are not present in this case, as no statutory gaps exist to fill.
¶ 9 The legislature did envision the circumstances before us in this case. The statutory void confronting us in L.B. is absent here. As did the parties in L.B., Reimen and Frazier chose to have children and form a family. But unlike in L.B., Reimen's and Frazier's status as legal parents was established at the outset. In contrast, Corbin entered M.F.'s life as a stepparent, a third party to M.F.'s two existing parents. When Corbin entered her life, M.F.'s legal parents and their respective roles were already established under our statutory scheme. In the case before us, we perceive no statutory void and cannot apply an equitable remedy that infringes upon the rights and duties of M.F.'s existing parents.
¶ 10 Corbin argues that this court's recognition of his de facto parent status would not infringe on the parental rights of M.F.'s existing parents. In L.B., we reasoned that no infringement occurs when there are "competing interests of two parents" who are both in "equivalent parental positions." 155 Wash.2d at 710, 122 P.3d 161. But in this case, we are faced with the competing interests of parentswith established parental rights and dutiesand a stepparent, a third-party who has no parental rights.
¶ 11 An avenue already exists for a stepparent seeking a legal, custodial relationship with a child. The legislature has created and refined a statutory scheme by which a stepparent may obtain custody of a stepchild. In In re Marriage of Allen, the Court of Appeals reasoned that the "best interests of the child" standard, according to which custody was to be determined under the former *1273 Washington custody statute, applied only to actions between parents. 28 Wash.App. 637, 645, 626 P.2d 16 (1981) (discussing former RCW 26.09.190 (1973)). Between a parent and a nonparent, a "more stringent balancing test" was required. Allen, 28 Wash.App. at 645, 626 P.2d 16. The court held that a nonparent may overcome a parent's rights only by a showing of either parental unfitness or actual detriment to the child.
¶ 12 In 1987, the legislature approved of the result in Allen when it enacted a new set of statutes applicable specifically to third-party custody actions, chapter 26.10 RCW (Laws of 1987, ch. 460, § 25). The legislature expressed its intent to "continue the law relating to third-party actions involving custody of minor children. . . ." RCW 26.10.010. RCW 26.10.100, like former RCW 26.09.190, specified that "[t]he court shall determine custody in accordance with the best interests of the child." Following enactment of this new chapter, the Court of Appeals recognized the legislature's intent to continue the prior law in In re Custody of Stell, 56 Wash. App. 356, 365, 783 P.2d 615 (1989). In Stell, the court reasoned that the legislature's stated intent to "continue" the prior law and its reenactment of the language in former RCW 26.09.190 in RCW 26.10.100 indicated that it also intended to continue judicial interpretations of those sections. Stell, 56 Wash.App. at 365, 783 P.2d 615.
¶ 13 This court subsequently approved of the Allen standard as well, when we confirmed that under chapter 26.10 RCW, a third-party may be granted custody only by demonstrating that placement of the child with a fit parent will result in actual detriment to the child. In re Custody of Shields, 157 Wash.2d 126, 144, 136 P.3d 117 (2006). In Shields, as in Allen, the action was brought by a stepparent.
¶ 14 This intertwined judicial and statutory history illustrates the legislature's ongoing intent to create laws accommodating stepparents who seek custody on or following dissolution. Though our statutory scheme does not permit a stepparent to petition for parental status, this does not equate to a lack of remedy. The legislature has provided a statutory remedy for a stepparent seeking a custodial relationship with a stepchild by enabling stepparents to petition for custody.
¶ 15 Corbin argues that he has established a prima facie case that he is M.F.'s de facto parent. In L.B., we set forth a multifactor test by which de facto parentage may be established.[1] As the Court of Appeals reasoned below, however, the correct starting point is not whether the de facto parent test has been met. The factors outlined in L.B. are relevant only if this court first decides that the de facto parentage doctrine applies to the circumstances presented in this case.
¶ 16 As noted above, we adopted the de facto parentage doctrine to correct a specific statutory shortcoming: the lack of remedy available to the respondent in L.B., who was a "parent" in every way but legally. To fill this statutory gap, we created a common law method to establish parentage where, had the respondent been able to participate in traditional family formation, parentage would have or could have been established by statutory means. But here, the petitioner is a third-party to the two already existing parents, which places him in a very different position than the respondent in L.B. These differences, as well as the presence of a statutory remedy available to Corbin, support our conclusion that the de facto parentage doctrine should not extend to the circumstances in this case.
¶ 17 Moreover, the de facto parent test we applied in L.B. could not, in the stepparent context, be applied in a meaningful way. *1274 The elements of the test are ill-suited to determinations in the stepparent context because in most cases they will be very easily satisfied. The first, for example, is that "the natural or legal parent consented to and fostered the parent-like relationship." L.B., 155 Wash.2d at 708, 122 P.3d 161. We believe that in the vast majority of cases a parent will encourage his or her spouse, the stepparent, to act like a parent in relationship to the child. Similarly, the second factor will nearly always be metthat "the petitioner and the child lived together in the same household." L.B., 155 Wash.2d at 708, 122 P.3d 161. The third element is that the petitioner assumed obligations of parenthood without expectation of compensation, and one only has to envision the stepparent attending school functions, helping the child get dressed in the morning, or engaging in the other numerous events that together make up family life with a child to see how easily this factor might be satisfied. The only variable in most cases, it would appear, is the length of time the stepparent has been in a parental role, and generally this would be merely a matter of how long the relationship with the parent endureshardly a basis for deciding parental status.

CONCLUSION
¶ 18 Because no statutory void exists in this case, as it did in L.B., we decline to extend the de facto parentage doctrine to the facts presented.[2] We thus affirm the Court of Appeals' decision.
WE CONCUR: BARBARA A. MADSEN, C.J., GERRY L. ALEXANDER, JAMES M. JOHNSON, RICHARD B. SANDERS and DEBRA L. STEPHENS, JJ.
CHAMBERS, J. (dissenting).
¶ 19 Four years ago, after examining the facts of this case, Commissioner Tracy G. Waggoner found that John Corbin had made a sufficient showing that he was M.F.'s de facto parent to allow his petition to go to trial. Shortly afterward, Judge Eric Z. Lucas firmly rejected the contention that In re Parentage of L.B., 155 Wash.2d 679, 122 P.3d 161 (2005), does not apply to stepparents. So should we. We should give Corbin the opportunity to prove what he has alleged; that he is her de facto parent under Washington law.
¶ 20 The majority frames this case as "whether a stepparent may acquire de facto parent status when the child has two fit parents." Majority at 1272. First, this statement of the issue assumes at least two things that have not been established: first, that a child can have no more than two parents; second, that both of M.F.'s parents are fit. The first assumption is at odds with L.B. itself, where the child's natural father was never found to be unfit; the second is questionable based on the record before this court. Because Judge Lucas properly understood that there is no unspoken stepparent exception to our opinion in L.B., I respectfully dissent.
¶ 21 Briefly, Corbin was M.F.'s stepfather for most of her life and is the father of her two brothers. After Corbin and M.F.'s mother divorced, the fatherly relationship continued, with the ongoing support of M.F.'s natural father. M.F. generally accompanied her brothers when they went to Corbin's house, where she had a bedroom and a close relationship with her new stepsisters. This state of affairs persisted for three years after the divorce until the day M.F. arrived at Corbin's house bruised in intimate places, apparently from being "tickled" by her mother's new boyfriend. Corbin and M.F.'s natural father were furious that this man had touched her in such a way. Based on that and other similar events, M.F.'s therapist became concerned enough that this new boyfriend was grooming her for sexual abuse that he made a report to the State. Shortly afterward, M.F.'s mother pulled her from therapy, and shortly after that, again supported by M.F.'s natural father, Corbin filed a petition to become her de facto father. According to M.F's therapist, Corbin is M.F.'s de facto father and losing him from her life would have a devastating impact on *1275 her psychological health and her ability to form healthy relationships. M.F.'s mother moved to dismiss the petition essentially on the ground that a stepparent did not have standing to bring it. The trial court denied the motion, and a court commissioner found that Corbin made a threshold showing that he was M.F's de facto parent. There is a trial court order in the record finding that M.F.'s mother's behavior is causing actual detriment to her children. There certainly are allegations of unfitness in this record; a motion for nonparental custody under RCW 26.10.030 would not tax the imagination.
¶ 22 Turning to the law, I disagree with the majority's characterization of L.B. as this court "fashion[ing] a remedy to fulfill the parties' agreement" in light of "the lack of a statutory remedy." Majority at 1272. L.B. was not about contract law. Instead, L.B. was about
whether our state's common law recognizes de facto parents and, if so, what rights and obligations accompany such recognition. Specifically, we are asked to discern whether, in the absence of a statutory remedy, the equitable power of our courts in domestic matters permits a remedy outside of the statutory scheme, or conversely, whether our state's relevant statutes provide the exclusive means of obtaining parental rights and responsibilities.
L.B., 155 Wash.2d at 688, 122 P.3d 161 (footnote omitted). We concluded that the statutes did not prove the exclusive means of obtaining parental rights and responsibilities. Id. at 707, 122 P.3d 161. In the four years since L.B. was announced, the legislature has expressed no discontent with that holding. Thus, the proper question is not whether anything in the elements we set forth in L.B. necessarily preclude a stepparent from filing a de facto parentage petition. The question is whether Corbin has made a threshold showing of those elements. Under L.B., Corbin is M.F.'s de facto parent if he can show:
(1) the natural or legal parent consented to and fostered the parent-like relationship, (2) the petitioner and the child lived together in the same household, (3) the petitioner assumed obligations of parenthood without expectation of financial compensation, and (4) the petitioner has been in a parental role for a length of time sufficient to have established with the child a bonded, dependent relationship, parental in nature. In addition, recognition of a de facto parent is "limited to those adults who have fully and completely undertaken a permanent, unequivocal, committed, and responsible parental role in the child's life."
Id. at 708, 122 P.3d 161 (internal citations omitted) (quoting C.E.W. v. D.E.W., 2004 ME 43, 845 A.2d 1146, 1152). Nothing in those factors precludes a stepparent from filing a de facto petition. In this case, the commissioner found that Corbin made a prima facie showing on each of those factors. We should let this case go to its conclusion.
¶ 23 The majority asserts that a statutory remedy exists here. RCW 26.09.240 does allow a nonparent to petition for visitation, but we held that statute unconstitutional in In re Parentage of C.A.M.A, 154 Wash.2d 52, 66, 109 P.3d 405 (2005). The majority cites to chapter 26.10 RCW, but there is no mechanism in that chapter for a de facto parent's rights to be formally recognized. RCW 26.10.030 does permit a nonparent to petition for custody, but that remedy is only available if "the child is not in the physical custody of one of its parents or if the petitioner alleges that neither parent is a suitable custodian." RCW 26.10.030. Corbin is not, at this point, alleging that the mother is not a suitable custodian, though there are certainly facts in this record that could support such a petition. See In re the Parentage of J.A.B., 146 Wash. App. 417, 191 P.3d 71 (2008). Further, taking the majority's logic, though not its explicit language, L.B. was incorrectly decided because RCW 26.10.030 was available at the time. RCW 26.10.100, cited several times by the majority, simply says that "[t]he court shall determine custody in accordance with the best interests of the child." It says nothing about determining parentage.
¶ 24 Corbin is not asking for custody; he is asking to be allowed to establish that he is M.F.'s parent. As the Court of Appeals wisely noted in rejecting its own opinion in M.F.:

*1276 More fundamentally, residential placement is not equivalent to parental status. The nonparent custody statute and the de facto parent doctrine have very different purposes. A nonparent custody order confers only a temporary and uncertain right to custody of the child for the present time, because the child has no suitable legal parent. When and if a legal parent becomes fit to care for the child, the nonparent has no right to continue a relationship with the child.
Parenthood comprises much more than mere custody. A parent has a fundamental liberty interest in the care, custody, and control of his or her child. One who meets the rigorous test that defines a de facto parent stands in legal parity to an otherwise legal parent, and therefore is vested with the same parental rights and responsibilities, limited only by the best interests of the child. The nonparent custody statute cannot provide an adequate remedy to one who meets the stringent de facto parent criteria.
J.A.B., 146 Wash.App. at 426, 191 P.3d 71 (footnotes omitted) (citing L.B., 155 Wash.2d at 708, 710, 122 P.3d 161). I agree. Aside from the now-repudiated Court of Appeals's M.F. opinion below, I have found no case that limits the de facto parent doctrine the way the majority would today.
¶ 25 We defined de facto parent in L.B.:

De facto parent: Literally meaning "parent in fact," it is juxtaposed with a legally recognized parent. Black's [Law Dictionary 448 (8th ed.2004)] (defining de facto as "[a]ctual; existing in fact; having effect even though not formally or legally recognized"). We are asked in this case to define the parameters of this term and in doing so, find that it describes an individual who, in all respects functions as a child's actual parent, meeting the criteria suggested herein.
L.B., 155 Wash.2d at 691 n. 7, 122 P.3d 161 (alteration in original). That definition does not say "except for stepfathers." Corbin has made a prima facie showing that he qualifies. For M.F.'s sake, he should be given the opportunity to prove his parentage.
¶ 26 I respectfully dissent.
WE CONCUR: SUSAN OWENS and MARY E. FAIRHURST, JJ.
NOTES
[1] In L.B., we adopted the following criteria for a plaintiff to establish de facto parenthood:

"(1) the natural or legal parent consented to and fostered the parent-like relationship, (2) the petitioner and the child lived together in the same household, (3) the petitioner assumed obligations of parenthood without expectation of financial compensation, and (4) the petitioner has been in a parental role for a length of time sufficient to have established with the child a bonded, dependent relationship, parental in nature." In addition, recognition of a de facto parent is "limited to those adults who have fully and completely undertaken a permanent, unequivocal, committed, and responsible parental role in the child's life."
L.B., 155 Wash.2d at 708, 122 P.3d 161 (citations omitted).
[2] Because we conclude that the de facto parentage doctrine does not apply here, we do not address Corbin's arguments concerning modification of the parenting plan between Reimen and Frazier.