[No. 42052-0-II.   Division Two.   August 14, 2012.]

SHAWN D. GREENHALGH, *Appellant*, v. THE DEPARTMENT OF CORRECTIONS, *Respondent*.

138

*Michael C. Kahrs* (of *Kahrs Law Firm PS*), for appellant.

*Robert M. McKenna, Attorney General,* and *Brian J. Considine, Assistant,* for respondent.

¶1 WORSWICK, C.J. — Shawn Greenhalgh, a correctional center inmate, appeals a trial court decision dismissing his Public Records Act (PRA)[1] lawsuit, arguing (1) the Department of Corrections (DOC) waived any statute of limitations affirmative defense by not raising this defense in its initial answer, (2) the trial court erred in applying the statute of limitations, and (3) the DOC is equitably estopped from arguing the statute of limitations because it

---

[1] Ch. 42.56 RCW.

promulgated an internal rule that is inconsistent with the statute of limitation defense.[2] We affirm.

## FACTS

¶2 Greenhalgh submitted two PRA requests to the DOC, asking for records explaining why the DOC charged inmates $0.20 per page for copies of documents produced under the PRA but only $0.10 per page for copies of inmate legal pleadings. Greenhalgh made his first request for these DOC records on February 23, 2007. The DOC timely responded on March 5 and informed Greenhalgh that it expected to have the documents responding to his request gathered in approximately 20 business days.

¶3 Then, on March 14, the DOC informed Greenhalgh that it had identified six pages of documents responding to his request and that it would release those documents to him on receipt of his payment for them. After receiving Greenhalgh's payment, the DOC sent him the six pages of documents and further informed Greenhalgh that it also enclosed a "Denial of Disclosure of Public Records form," which identified a few documents exempt from production under the attorney-client privilege. Clerk's Papers (CP) at 37.

¶4 The Denial of Disclosure of Public Records form stated that "[p]ages 7, 8, [and] 9" of the DOC's documents responding to Greenhalgh's request for its determination of copying and legal fees were "non-disclosable [sic] [under] RCW 42.17.310(1)(i)[3] [and] RCW 5.60.060(2)(a)" because they "contain[ed] attorney[-]client information." CP at 38.

---

[2] Greenhalgh further argues that (4) the DOC acted in bad faith by informing him that records responding to part of his request did not exist but later producing those records during discovery after he filed suit and (5) he is entitled to the maximum penalties based on the DOC's bad faith in responding to his PRA request. Because we affirm the trial court, we do not consider these arguments.

[3] Former RCW 42.17.310 (2005), *recodified as* RCW 42.56.210, effective July 1, 2006. For purposes of this opinion, neither former RCW 42.17.310 nor RCW 42.56.210 affects our analysis.

This denial form also stated that Greenhalgh *"may* appeal this decision" to the DOC's public disclosure administrator (Administrator). CP at 38 (emphasis added).

¶5 After receiving the six pages of documents the DOC released to him, Greenhalgh submitted a second, clarified PRA request to the DOC on April 12. Greenhalgh requested the specific formula the DOC used to determine its $0.20 per page copying fee for PRA requests and its $0.10 per page copying fee for inmate legal pleadings.

¶6 The DOC received this request on April 16 and timely responded on April 23. In its response, the DOC informed Greenhalgh that it did not have any "documents responsive to [his] request for formularies on the $[0].20 charge per copy for public disclosure copying fees"; therefore, it could not provide him with any. CP at 47. The DOC further informed Greenhalgh that it had three "pages responsive to [his] request for the formula for determining the charge of legal pleading copies that are exempt from disclosure, as they are attorney[-]client privileged information and withheld per . . . RCW 42.56.290 [and] RCW 5.60.060(2)(a)." CP at 47.

¶7 On July 14, Greenhalgh elected to pursue an optional administrative appeal of both of the DOC's disclosure decisions to the DOC's Administrator. In his appeal to the Administrator, Greenhalgh sought "the records [he] requested in [his earlier] request[s] and the records" that the DOC had withheld. Greenhalgh further stated that "[t]here must be public records [that show] how DOC determined [its conflicting] per page photocopying costs." CP at 49. Greenhalgh sought those documents and stated that he "appeal[ed] any and all DOC decisions to withhold such records." CP at 49.

¶8 The Administrator denied Greenhalgh's appeal on August 29. In her letter denying Greenhalgh's appeal, the Administrator stated that she upheld the DOC's March 29 denial of "pages 7, 8, [and] 9" of its records responding to his first request because the DOC correctly determined that

those pages "contain[ed] information given by the Attorney General's Office (the attorney) to its client, DOC. The information was given to the client, DOC, within the scope of the professional relationship with the Attorney General's Office." CP at 50. Thus, the Administrator concluded that the DOC correctly determined those pages were exempt from production under the attorney-client privilege.

¶9 Next, the Administrator concluded that the DOC did not deny production of documents relating to the DOC's determination that it would charge $0.20 per page for copies of public records because no such documents existed. The Administrator then upheld the DOC's denial of production of the documents relating to its formulation of the $0.10 per page copying fee for inmate legal pleadings. The Administrator's decision stated, "My decision constitutes final agency action." CP at 50.

¶10 On May 1, 2008, eight months after the Administrator denied Greenhalgh's administrative appeal but more than one year after the DOC claimed exemptions, Greenhalgh filed suit against the DOC in superior court for alleged PRA violations. In its answer, the DOC raised CR 12(b)(6) as an affirmative defense. Thereafter, Greenhalgh sent requests for production to the DOC, and he received several additional documents from the DOC on November 12, 2008.

¶11 Then, with no apparent activity on the case for over two years, Greenhalgh moved for summary judgment on February 4, 2011, claiming that the records the DOC released to him on November 12, 2008, in response to his requests for production were the records the DOC had previously claimed did not exist in response to his PRA request. Greenhalgh also requested penalties, costs, and reasonable attorney fees.

¶12 The DOC responded to Greenhalgh's motion for summary judgment by asking the trial court to dismiss his complaint as time barred because he failed to file suit within the PRA's one-year statute of limitations under

RCW 42.56.550(6). Greenhalgh countered that the DOC had waived any statute of limitations affirmative defense by failing to raise it in its answer. Accordingly, the DOC moved the trial court for leave to amend its answer to include expiration of the statute of limitations as an affirmative defense. Although Greenhalgh argued that the trial court should deny the DOC's motion to amend its answer because the DOC made it after undue delay,[4] the court exercised its discretion and allowed the DOC to amend its answer. On the same day it allowed the DOC to amend its answer, the trial court entered an order denying Greenhalgh's motion for summary judgment and dismissing his complaint with prejudice as time barred under the statute of limitations imposed by RCW 42.56.550(6). Greenhalgh appeals.

## ANALYSIS

### I. Standards of Review

¶13 We review a trial court's decision to grant or deny a party's motion to amend a pleading for a manifest abuse of discretion. *Wilson v. Horsley*, 137 Wn.2d 500, 505, 974 P.2d 316 (1999); *Ensley v. Mollmann*, 155 Wn. App. 744, 759, 230 P.3d 599, *review denied*, 170 Wn.2d 1002 (2010). Accordingly, we will not reverse a trial court's ruling on a motion to amend absent a " 'clear showing of abuse of discretion,' " meaning the trial court's exercise of its discretion was manifestly unreasonable, based on untenable grounds, or exercised for untenable reasons. *Wilson*, 137 Wn.2d at 505 (quoting *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971)). However, we review challenged agency action under the PRA and questions of statutory interpretation de novo. *Gronquist v. Dep't of Corr.*,

---

[4] The DOC countered Greenhalgh's undue delay argument by submitting evidence that during the more than two-year period during which Greenhalgh took no action on this case, the former assistant attorney general assigned to this case passed away unexpectedly in February 2010.

159 Wn. App. 576, 582, 247 P.3d 436, *review denied*, 171 Wn.2d 1023 (2011); *Lake v. Woodcreek Homeowners Ass'n*, 169 Wn.2d 516, 526, 243 P.3d 1283 (2010).

## II. Statute of Limitations Affirmative Defense

¶14 Greenhalgh first argues that the DOC waived any statute of limitations affirmative defense and, thus, the trial court abused its discretion in granting the DOC's motion to amend its answer to add that defense. We disagree.

¶15 A party waives a statute of limitations affirmative defense (1) by engaging in conduct that is inconsistent with that party's later assertion of the defense or (2) by being dilatory in asserting the defense. *See Harvey v. Obermeit*, 163 Wn. App. 311, 323, 261 P.3d 671 (2011); CR 8(c). A party does not waive a statute of limitations affirmative defense, however, by conducting discovery because "the mere act of engaging in discovery 'is not always tantamount to conduct inconsistent with a later assertion of the [affirmative] defense . . . .' " *Harvey*, 163 Wn. App. at 324 (internal quotation marks omitted) (quoting *Lybbert v. Grant County*, 141 Wn.2d 29, 41, 1 P.3d 1124 (2000)); *Omaits v. Raber*, 56 Wn. App. 668, 671, 785 P.2d 462 (1990). A party is not dilatory in asserting an affirmative defense if it asserts the defense in its answer or amended answer. *See Omaits*, 56 Wn. App. at 671; *see also Harvey*, 163 Wn. App. at 323.

¶16 Here, even though the DOC responded to Greenhalgh's November 2008 discovery request, that conduct was not inconsistent with its later assertion of a statute of limitations affirmative defense. Also, because the DOC asserted the statute of limitations as an affirmative defense in its amended answer, it was not dilatory in raising it. *See* CR 8(c), 15. Accordingly, the DOC did not waive its statute of limitations affirmative defense.

¶17 Greenhalgh cites to four cases in support of his argument that the DOC waived its statute of limitations

defense: *Romjue v. Fairchild*, 60 Wn. App. 278, 281-82, 803 P.2d 57 (1991) (holding that the defendant waived the CR 12(b)(5) defense of insufficient service of process by initiating discovery unrelated to that defense); *Raymond v. Fleming*, 24 Wn. App. 112, 115, 600 P.2d 614 (1979) (holding that the defendant waived the CR 12(b)(5) defense of insufficient service of process by being dilatory in asserting it because even though plaintiff actively pursued the litigation, the defendant sought delays for a year before asserting the defense); *Dep't of Revenue v. Puget Sound Power & Light Co.*, 103 Wn.2d 501, 504-05, 694 P.2d 7 (1985) (holding that a party who fails to assert a statute of limitations affirmative defense in its answer or amended answer waives that defense unless it is central to the litigation); and *Rainier Nat'l Bank v. Lewis*, 30 Wn. App. 419, 422, 635 P.2d 153 (1981) (holding that a defendant waives the CR 8(c) defense of failure of consideration by responding to a motion for summary judgment without seeking to amend its answer). But each of these cases is distinguishable.

¶18 Neither *Romjue* nor *Raymond* helps Greenhalgh because both address the CR 12(b)(5) insufficient service of process affirmative defense. 60 Wn. App. at 281; 24 Wn. App. at 114-15. Further, *Romjue* does not help Greenhalgh because in that case, the defendant waived the affirmative defense by engaging in conduct inconsistent with the defense when it initiated discovery unrelated to the defense and failed to raise the affirmative defense in an answer or amended answer. *Romjue*, 60 Wn. App. at 280-81. But here, the DOC merely responded to Greenhalgh's discovery request by producing six pages of documents and it did raise its affirmative statute of limitations defense in its amended answer.

¶19 Moreover, *Raymond* does not help Greenhalgh because the defendant there was dilatory in asserting the affirmative defense when he stalled for a year before raising the defense even though Raymond actively pursued the litigation. 24 Wn. App. at 114-15. Conversely, here,

Greenhalgh did not actively pursue the litigation. Instead, he filed the complaint in 2008 and then let the lawsuit idle for two years before moving for summary judgment. Shortly after Greenhalgh's motion, the DOC obtained the trial court's permission to amend its answer to assert the statute of limitations as an affirmative defense. Consequently, *Raymond* does not support Greenhalgh's argument.

¶20 Additionally, neither *Puget Sound Power* nor *Rainier National Bank* supports Greenhalgh's argument because the defendants in both of those cases did not seek to amend their answers to raise an affirmative defense. 103 Wn.2d at 504-05; 30 Wn. App. at 422-23. Here, however, the DOC amended its answer and did assert its CR 8(c) statute of limitations defense in that amended answer.

¶21 Because the DOC asserted its statute of limitations affirmative defense in its amended answer, the DOC complied with CR 8(c) and did not waive the defense. The cases Greenhalgh cites do not support his position. Consequently, Greenhalgh's arguments fail and we hold that the DOC did not waive its statute of limitations defense.

### III. APPLICABLE STATUTE OF LIMITATIONS

¶22 Greenhalgh next argues that the PRA's one-year statute of limitations never began to run because neither of that statute's two clear triggering events occurred. Greenhalgh further argues that the appropriate statute of limitations is determined by reference to the statutes,[5] a Washington Administrative Code provision,[6] and a DOC policy.[7] We disagree.

---

[5] RCW 42.56.520, .550(6).

[6] WAC 137-08-140.

[7] DOC Policy 280.510 (revised Mar. 13, 2007).

A. *The DOC's Claimed Exemptions Triggered the PRA's Statute of Limitations*

¶23 The PRA's one-year statute of limitations is clearly triggered by either of "two occurrences: (1) the agency's claim of an exemption or (2) the agency's last production of a record on a partial or installment basis." *Tobin v. Worden*, 156 Wn. App. 507, 513, 233 P.3d 906 (2010); RCW 42.56.550(6).

¶24 Here, on February 23, 2007, Greenhalgh sent the following PRA request to the DOC:

1. Per RCW 4[2].56.120, an agency's fees for copying public records shall not exceed the amount necessary to reimburse the agency for its actual costs incident to copying. I request any and all records which explain how the DOC determined it must charge $[0].20 per page in order for it to be fully reimbursed for such copying; and

2. I request any and all records which explain how the DOC determined that it need not charge in excess of $[0].10 per page for copying offender legal pleadings in accordance with DOC [Policy] 590.500 in order to be fully reimbursed for such copying, if it's [sic] actual cost is $[0].20 per page.

CP at 34. On March 29, the DOC timely responded to Greenhalgh's request by sending him six pages of documents and further informing him that it "also enclosed a Denial of Disclosure of Public Records form" that identified a few documents exempt from production under the attorney-client privilege. CP at 37. Thus, the DOC claimed an exemption to Greenhalgh's first request on March 29.

¶25 Then, on April 12, Greenhalgh submitted another PRA request to the DOC. In this request, Greenhalgh stated that he specifically requested:

1. The DOC's formula for determining its copying fee, $[0].20 per page, necessary to reimburse itself for providing copies of public records, as published in WAC 137-08-110(1); and

2. The DOC's formula for determining its copying fee, $[0].10 per page, necessary to reimburse itself for providing copies

of offenders' legal pleadings, as published in DOC Policy #590.500.

CP at 46.

¶26 In its timely response, the DOC informed Greenhalgh on April 23 that it did not have any "documents responsive to [his] request for formularies on the $[0].20 charge per copy for public disclosure copying fees," therefore it would not provide him with any. CP at 47. The DOC further informed Greenhalgh that it had three "pages responsive to [his] request for the formula for determining the charge of legal pleadings [and] copies that are exempt from disclosure, as they are attorney[-]client privileged information and withheld per . . . RCW 42.56.290 [and] RCW 5.60.060(2)(a)." CP at 47. Thus, the DOC claimed on April 23 that documents responding to Greenhalgh's second request were exempt.

B.  *Greenhalgh's PRA Suit Is Time Barred*

¶27 Because the DOC claimed the documents were exempt from production in response to both of Greenhalgh's requests, the PRA's one-year statute of limitations was triggered on March 29, 2007, for Greenhalgh's first request and on April 23, 2007, for Greenhalgh's second request. RCW 42.56.550(6); *Tobin*, 156 Wn. App. at 513. Thus, when Greenhalgh filed his PRA complaint on May 1, 2008, his action was time barred under RCW 42.56.550(6) and *Tobin*.

¶28 In an attempt to avoid this result, Greenhalgh makes a novel argument: he made four distinct PRA requests and the DOC failed to claim an exemption for one of those four requests. Greenhalgh's argument presents an issue of first impression and requires us to determine whether Greenhalgh made two or four PRA requests.

¶29 Greenhalgh construes his PRA requests as four separate requests by arguing that he made two requests each on February 23 and April 12. Then, Greenhalgh claims that the DOC failed to claim an exemption for his April 12

request for records on the DOC's formula fixing its PRA request copying costs at $0.20 per page because, rather than claiming an exemption, the DOC instead claimed that no such documents existed. Greenhalgh reasons that the one-year statute of limitations was not triggered for his request for the DOC's formula fixing its PRA copying costs at $0.20 because the DOC did not specifically claim an exemption for that portion of his request, and thus, he argues, his claim for that alleged PRA violation is not time barred. We disagree.

¶30 Greenhalgh cites to *Tobin* to support his argument that each type of document he requested on February 23 and April 12 constitutes a separate request, for a total of four separate requests. But *Tobin* does not support Greenhalgh's argument. The *Tobin* court did not address whether a single written request for multiple types of documents constitutes multiple "requests" under the PRA. *See* 156 Wn. App. at 510-12. Instead, the *Tobin* court addressed whether a single document was a record provided on a "partial or installment basis" within the meaning of the PRA. 156 Wn. App. at 513-15.

¶31 Moreover, the DOC correctly observes that many cases treat a written request for several types of documents as a single request. *Sanders v. State*, 169 Wn.2d 827, 837, 240 P.3d 120 (2010) (treating a single written request for "all records pertaining to" a Supreme Court justice's visit to McNeil Island as a single request even though the agency identified 478 distinct responsive documents); *Ockerman v. King County Dep't of Developmental & Envtl. Servs.*, 102 Wn. App. 212, 214-15, 218, 6 P.3d 1214 (2000) (treating a single written request for "all documents contained in [a specified] building permit file" *and* for " 'all voice mail and e-mail messages' relating to the permit or the property for which the permit was granted" as a single request even though it required the agency to review and assemble responsive documents from many files and from all of its 285 employees); *Greenhalgh v. Dep't of Corr.*, 160

Wn. App. 706, 708, 248 P.3d 150 (2011) (treating a single written request for inmate store price lists for several state correctional centers *and* for correctional center educational and vocational programs as a single request); *Gronquist*, 159 Wn. App. at 581 (treating a single written request for "14 different categories of information" as a single PRA request); *see also McKee v. Dep't of Corr.*, 160 Wn. App. 437, 440, 248 P.3d 115 (2011) (treating three separate written requests as three separate PRA requests even though the records requester wrote each of his three written requests on the same date).

¶32 Accordingly, we consider each written request for records under the PRA as a single request, even if that written request seeks multiple categories of records. Thus, a person makes a single records request if he sends a single letter to an agency requesting multiple categories of documents. Construing a single written request for records as a single PRA request, even if it seeks several types of records, allows agencies some predictability in forming their response to a request and furthers public policy by preserving government resources in issuing a single response to a single PRA request.

¶33 Therefore, we agree with the DOC that Greenhalgh made two, rather than four, PRA requests and that the DOC responded to both of those requests by claiming exemptions. Because the DOC claimed exemptions to each of Greenhalgh's PRA requests on March 29, 2007, and April 23, 2007, it triggered the RCW 42.56.550(6) one-year statute of limitations for his first request on March 29 and for his second request on April 23. Thus, the one-year statute of limitations for Greenhalgh's PRA complaint lapsed, at the latest, on April 23, 2008. Accordingly, Greenhalgh's May 1, 2008, complaint was time barred. Thus, Greenhalgh's argument fails.[8]

---

[8] Greenhalgh further argues that two other sources of authority stand for the proposition that final agency action for purposes of the statute of limitations does

## IV. EQUITABLE ESTOPPEL

¶34 Greenhalgh further argues that the DOC is equitably estopped from arguing that the statute of limitations for his lawsuit lapsed one year after its final exemption claim because administrative code provisions and internal DOC policies state the one-year statute of limitations is triggered two business days after an administrative appeal ruling on an agency record denial. We disagree.

### A. *Specific Facts*

¶35 The DOC follows administrative procedures for reviewing its denials of inmate PRA requests. *See* WAC 137-08-140; *see also* DOC Policy 280.510 (revised Mar. 13, 2007). Under these procedures, a records requester may elect to pursue an administrative appeal when he disagrees with the DOC's denial of a public records request. WAC 137-08-140(1). An administrative code provision establishes the DOC's procedure for reviewing these optional administrative appeals:

> Within ten working days after receipt of a petition for review of a decision denying disclosure, the public disclosure officer shall review the decision denying disclosure, and advise the petitioner, in writing, of the public disclosure officer's decision on the petition. Such review shall be deemed complete at the end of the second business day *following denial of disclosure*, and shall constitute final agency action for the purposes of judicial review.

---

not actually occur until the end of the second business day following the agency's denial of a public records request. RCW 42.56.520; WAC 137-08-140(2). Even if we accept this argument, the DOC's action was final at the end of the second business day following its denial of Greenhalgh's request. RCW 42.56.520. The DOC claimed exemptions and denied Greenhalgh's requests on March 29, 2007, and April 23, 2007. Thus, assuming without deciding that the PRA's statute of limitations did not begin to run until two business days after those denials, that statute of limitations still lapsed on March 31, 2008, for Greenhalgh's first request and on April 25, 2008, for his second request. Because Greenhalgh did not file his complaint until May 1, 2008, his complaint was still time barred. Thus, Greenhalgh's argument still fails.

WAC 137-08-140(2) (emphasis added). Thus, this administrative code provision relates back to the date the DOC denied disclosure of the records because it deems the appeal process complete two business days "following denial of disclosure," not following denial of any administrative appeal. WAC 137-08-140(2).

¶36 In addition to the administrative code provision, the DOC also established an internal policy for its review of optional administrative appeals. When Greenhalgh elected to pursue an administrative appeal of the DOC's denial of his PRA requests, a DOC policy stated:

A. If the requestor disagrees with a decision to deny the request, or any part of the request, the requester may appeal to the Department Appeals Officer for review of the decision. . . .

B. Final [DOC] action for the purposes of judicial review will not be considered to have occurred until the Department Appeals Officer has rendered his [or] her decision on the appeal or until the close of the second business day following receipt of the appeal, whichever occurs first.

C. *Any further appeal will be made to the [s]uperior [c]ourt per RCW 42.56.*

CP at 100 (emphasis added).

B. *The Administrative Code Provision and DOC Policy Do Not Give Rise to Equitable Estoppel*

██ ██ ¶37 Equitable estoppel may be appropriate to prevent inequity if (1) a party's act or admission is inconsistent with a later assertion, (2) another party acts in reliance on the first party's earlier act or admission, and (3) the party relying on that act or admission would be injured if the first party was not estopped from repudiating its earlier act. *Davidheiser v. Pierce County*, 92 Wn. App. 146, 153, 960 P.2d 998 (1998). To prevail on a claim for equitable estoppel, a party must show both that it did not know the facts and that there was no convenient and available way to

obtain those facts. *Davidheiser*, 92 Wn. App. at 153. Equitable estoppel does not normally apply to representations of law. *Davidheiser*, 92 Wn. App. at 153.

▌▌ ¶38 Equitable estoppel does not preclude the DOC from raising its statute of limitations defense because the WAC provision and the DOC policy statement are consistent with the PRA's one-year statute of limitations. Although the form the DOC provided to Greenhalgh stated that Greenhalgh *may* appeal that decision within the agency, any such administrative appeal was optional. A records requester's original action claim in superior court for an alleged PRA violation is separate and distinct from any potential administrative remedy he or she may have under the Administrative Procedure Act.[9] *See* RCW 42.56.550(6); RCW 34.05.510(3). But, when triggered, the PRA's one-year statute of limitations provision is mandatory. RCW 42.56.550(6); *Tobin*, 156 Wn. App. at 512-13. The DOC's optional administrative appeal procedure did not change the legal effect of the PRA's mandatory statute of limitations.

▌ ¶39 Further, the DOC did not make any *factual* statements inconsistent with its earlier factual statements or with the law. *See Davidheiser*, 92 Wn. App. at 153. Greenhalgh fails to show both that the DOC itself made the statement contained in WAC 137-08-140 and that the statement contained in that provision was a statement of fact. Moreover, even assuming without deciding that the DOC itself did make the statement contained in WAC 137-08-140, the statement is consistent with the PRA's one-year statute of limitations because it states, "Such

---

[9] The Administrative Procedure Act is codified at chapter 34.05 RCW. Although the Administrative Procedure Act generally requires a person to exhaust his or her administrative remedies by preventing him or her from asserting any claim until after final agency action, the PRA and its one-year statute of limitations impose no such restriction. RCW 42.56.550(6); RCW 34.05.534. Here, Greenhalgh had discretion to pursue any administrative appeal but he had no duty to exhaust his administrative remedies before asserting his PRA claim in superior court. *See* RCW 42.56.550(6).

review shall be deemed complete at the end of the second business day following *denial of disclosure*, and shall constitute final agency action for the purposes of judicial review." WAC 137-08-140(2) (emphasis added). Thus, it deems the DOC action complete for purposes of suits for PRA violations on the second business day following the DOC's denial of disclosure. Greenhalgh misconstrues this language to mean that the DOC's action is final two business days following the denial of a record requester's administrative appeal. But this argument ignores the provision's clear language. The provision relates final DOC action back to the DOC's denial of the PRA request. Thus, Greenhalgh's argument that WAC 137-08-140 equitably estopped the DOC from asserting its statute of limitations defense fails.

¶40 Although Greenhalgh further cites to DOC Policy 280.510 to support his equitable estoppel argument, the argument is insufficient to establish equitable estoppel. DOC Policy 280.510 states, "Final [DOC] action for purposes of judicial review will not be considered to have occurred until the [DOC] Appeals Officer has rendered his [or] her decision on the [optional] appeal or until the close of the second business day following receipt of the appeal, whichever occurs first." CP at 100. While this internal DOC policy statement may be inconsistent with the PRA, the WAC, and the DOC's statute of limitations defense here, it is not inconsistent with the Administrative Procedure Act. Because Greenhalgh brought suit under the PRA, its one-year statute of limitations applied. RCW 42.56.550(6). Given the ready availability of the information on the PRA's one-year statute of limitations contained in RCW 42.56-.550(6), RCW 42.56.520, and WAC 137-08-140(2), Greenhalgh cannot show that he had access to and relied on DOC Policy 280.510 but had no ready access to the actual law that imposed the PRA's one-year statute of limitations. Thus, Greenhalgh's reliance on the DOC's policy still fails to establish equitable estoppel.

¶41 Consequently, Greenhalgh fails to establish that any of the DOC's statements were inconsistent with its assertion of the one-year statute of limitations under the PRA. Thus, Greenhalgh failed to show that equitable estoppel applies. Accordingly, equitable estoppel does not prevent the DOC from raising the statute of limitations as an affirmative defense and Greenhalgh's argument fails.

## ATTORNEY FEES

¶42 Lastly, Greenhalgh requests reasonable costs and attorney fees on appeal if he prevails on appeal under the PRA and RAP 18.1. Because Greenhalgh has not prevailed, he is not entitled to costs or attorney fees on appeal.

¶43 Affirmed.

HUNT and JOHANSON, JJ., concur.