FILED
COURT OF APPEALS
DIVISION II

2015 MAR 31 AM 8: 38

STATE OF WASHINGTON
BY_____
DEPUTY

## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

### DIVISION II

| | |
|---|---|
| IN RE CUSTODY OF L.Z., | No. 46466-7-II |
| a minor child. | |
| DANIEL SCHOCH, | |
| Respondent, | |
| and | |
| LIYING ZHANG SCHOCH, | UNPUBLISHED OPINION |
| Appellant, | |

SUTTON, J. — Liying Zhang[1] appeals the trial court's order granting Daniel Schoch, her ex-husband, permanent nonparental custody of one of Zhang's minor children. Zhang argues that the trial court erroneously applied a "best interests of the child" standard and thereby abused its discretion and erred when it changed the child's last name. Zhang requests attorney fees and costs on appeal. Schoch cross-appeals arguing that the trial court erred when it denied his motion to amend his petition to add a de facto parentage claim.

We hold that (1) the trial court abused its discretion when it erroneously applied a "best interests of the child" standard; (2) the trial court erred by changing the minor's last name; and (3) the trial court abused its discretion in denying Schoch's motion to add a de facto parentage claim. Accordingly, we vacate the trial court's nonparental custody decree and residential schedule and reverse and remand for proceedings consistent with this opinion. On remand, Schoch may pursue

---

[1] We refer to Liying Zhang Schoch as Liying Zhang, we intend no disrespect.

a de facto parentage claim. We award Zhang reasonable attorney fees and costs on appeal in the amount of $10,000 based on her need and Schoch's ability to pay.

## FACTS

Liying Zhang met Daniel William Schoch through the internet in October 2008. Zhang was living in China, and Schoch was living in Grays Harbor County. Zhang had two daughters, Lh. and Lx.[2], both whom she adopted as infants after finding them abandoned near her home in China. At the time of trial, Lh. was approximately 14 years old and Lx. was approximately 15 years old.

Zhang and Schoch met in person several times before they were married in November 2009. That same November, Zhang left her job with a Chinese pharmaceutical company and moved to Grays Harbor County with her two daughters to be with Schoch. Once she relocated to the United States, Zhang no longer worked outside the home and she and her daughters lived in Schoch's home.

After they married, Schoch asked Zhang to care for his ailing father and several of Schoch's grandchildren. This arrangement caused marital stress because Zhang wanted to work outside the home. Schoch insisted that Zhang care for his family, and he threatened not to renew Zhang's green card. Zhang complied, but felt she was no longer treated as Schoch's equal.

Tension also existed in the home because of Zhang's desire to have her daughters speak to her in Chinese. During one incident, Schoch became angry when Zhang and Lx. did not eat

---

[2] It is appropriate to provide some confidentiality in this case. Accordingly, it is hereby ordered that initials will be used in the case caption and in the body of the opinion to identify the parties and other juveniles involved.

American food, but ate Chinese food instead. Schoch complained the house smelled, swept the meal off the table onto the floor, and fed the remaining food to the dog. When Zhang tried to clean the dishes, Schoch threw a pot or bowl at Zhang that struck her on the arm and caused a welt.

According to Schoch, Zhang did not like Lh.'s rapid adjustment to American culture. When Lh. first arrived in the United States when she was 10 years old, she spoke no English, but by the time of trial she could speak better English than her mother. Zhang would become upset when Lh. did not want to speak to her in Chinese. Schoch refused to allow Zhang to speak Chinese to either daughter in his presence. At one time, during an argument, Zhang got down on her knees, crying and begging her daughters to speak Chinese to her.

On November 6, 2012 Zhang filed a petition for dissolution. Zhang intended to relocate to California with her daughters; a friend had offered to let them live with her in order to help Zhang find a job. Zhang bought a round trip airplane ticket for herself and Lh. to travel to China to visit Zhang's ailing sister-in-law; the older daughter, Lx. had just traveled to China the previous year. Zhang picked up Lh. from school to take her to the airport, but Lh. physically resisted going.

Schoch filed a nonparental custody petition that same day and obtained an ex parte restraining order preventing Zhang from removing Lh. from Washington. In his petition for nonparental custody, Schoch alleged that Zhang's parental visitation should be limited due to (1) "[p]hysical, sexual or a pattern of emotional abuse"; (2) "[a] history of acts of domestic violence as defined in RCW 26.50.010(1)";[3] and (3) "[t]he child has expressed great fear of the mother and

---

[3] RCW 26.50.010(1) defines "[d]omestic violence" as: "(a) Physical harm, bodily injury, assault, or the infliction of fear of imminent physical harm, bodily injury or assault, between family or household members."

has been abused by the mother." Clerk's Papers (CP) at 3, 4. Zhang denied these allegations. The trial court then entered an agreed temporary order, placing Lh. with her mother but allowing Schoch visitation. The trial court also appointed a guardian ad litem (GAL) to investigate and report to the trial court regarding custody and visitation, and ordered the GAL to hold the children's passports.

The GAL investigated the nature of Schoch's and Zhang's relationship with both girls, and reported her findings and recommendations to the trial court. Although Schoch did not adopt either daughter, he actively participated in their schooling and activities, and both girls referred to Schoch as their father during the parties' four year marriage. Lx. showed little interest in rural farm life and maintained a closer bond with her mother. The younger daughter, Lh. became very involved with the farm animals and embraced her new life with Schoch. Lh. "developed a strong parentlike bond [with Schoch] similar to that of a father-daughter relationship." CP at 43C (Sealed Report of GAL at 3). Lh. expressed a "strong desire to remain with [Schoch]" and continue her life in Grays Harbor.[4] CP at 43C (Sealed Report of GAL at 3).

The GAL reported that Lh. had repeatedly contacted her complaining about Zhang, but the GAL was not able to confirm any allegations of abuse or threats. The GAL testified that Lh. expressed "concern" "over and over again" about her "fear of being sent back to China." VRP (July 30, 2013) at 91. Schoch alleged that Zhang kicked Lh. and slapped her in the face with a wet

---

[4] Schoch acknowledged that if Zhang remained in Grays Harbor, "certainly that could be a possibility that they [could] have some sort of shared custody or [Schoch] has lots of visitation, but if [Zhang] leaves the area, custody should rever[t] to [Schoch]." VRP (July 30, 2013) at 101-02.

4

towel numerous times. Zhang denied these allegations. According to the GAL's report, neither Child Protective Services nor law enforcement substantiated these allegations after investigating them.

After completing her investigation, the GAL reported allegations that: (1) Zhang inflicted self-harm over Lh.'s refusal to speak to her in Chinese; (2) Zhang made repeated threats to send Lh. back to China; and (3) Zhang attempted to fly to China and take Lh. with her against Lh.'s will, but Schoch stopped Zhang from doing so by obtaining an ex parte temporary restraining order.

The GAL described Lh. as a "typical pre-teen" who "knows what she wants, and she is going to get her own way." VRP (July 30, 2013) at 90. But the GAL also testified that Lh. "never . . . indicated a lack of affection for [Zhang] or her older sister," but instead she had "expressed great concern" for them. VRP (July 30, 2013) at 91. The GAL summarized Lh.'s concerns by stating: "[T]his little girl [Lh.] is very torn. She very much wants to stay here, and she wants her mom to stay here, and her sister to stay here, but she [Lh.] wants to maintain a relationship with Mr. Schoch, even if they [Zhang and Lx.] don't." VRP (July 30, 2013) at 92. The GAL described Lh.'s relationship with her mother as "challenging" in part because Zhang and her older daughter Lx. "cling very tightly to their cultural roots. [Lh.] has pushed some of that away." VRP (July 30, 2013) at 91.

The GAL testified that it would be in Lh.'s "best interests" to "remain . . . in the Montesano School District and keep . . . on with the activities she has been involved in the last three [years]." VRP (July 30, 2013) at 89. The GAL declined to recommend who should be awarded custody of

Lh., but said the decision should be based on "facilitat[ing]" the "living circumstances" that the GAL recommended were in Lh.'s best interests. VRP (July 30, 2013) at 89.

Several months before trial, Schoch moved to amend his pleading to add a de facto parentage claim as to Lh. The trial court denied the motion without explanation. On August 9, 2013, after a bench trial, the trial court granted Schoch's petition and awarded him permanent nonparental custody of Lh. and entered a nonparental custody decree, residential schedule, and findings of fact and conclusions of law dissolving the marriage.[5] In awarding Schoch permanent nonparental custody, the trial court found:

> [T]hat the child is flourishing academically, physically, athletically and extracurricularly living in Grays Harbor County and attending Montesano Schools. She is a 4.0 student, is in band, plays traveling team softball, is a member of 4-H, is raising a market steer for County Fair, loves animals, and thoroughly enjoys and embraces the farm and American lifestyle. She has made close friends. She has known Daniel Schoch as her "Daddy" and has had no other father-daughter relationship. The child has expressed concern about the uncertainty of living with the mother. There have been numerous incidents of inappropriate verbal, psychological and physical punishment of the child by the mother and threats of being sent away from the Country for transgressions.
>
> The child's residence with the mother would be an environment detrimental to her continued growth and welfare.

CP at 73 (Finding of Fact (FF) 2.6).

The trial court further found that (1) Zhang had encouraged a parent-child relationship between Schoch and Lh., and that it was in Lh.'s "best interest[s]"[6] to be placed in Schoch's

---

[5] The trial court found that Zhang stipulated to adequate cause to hear the case under by agreeing that the petitions for nonparental custody and dissolution could be heard together. On appeal, Zhang argued that she never stipulated to adequate cause.

[6] CP at 75 (Conclusion of Law (CL) 3.2).

custody; (2) Zhang "inappropriate[ly] punish[ed]"[7] Lh.; (3) Zhang "threat[ened]"[8] to send Lh. back to China; (4) Zhang attempted to travel with Lh. to China without the trial court's or Schoch's approval; and (5) the trial court had "significant questions regarding [Zhang's] credibility after hearing [Zhang's] testimony, witnessing her demeanor, and hearing the testimony and reports of others." CP at 74 (FF 2.13). Upon entering its custody order, the trial court also changed Lh.'s last name to Schoch.

Zhang appeals. Schoch cross-appeals the trial court's denial of his motion to amend to add a de facto parentage claim.

## ANALYSIS

Zhang argues that the trial court applied the wrong "best interest[s]"[9] of the child standard and thereby abused its discretion by failing to apply the correct "'actual detriment'" standard. Br. of Appellant at 22 (quoting *In re Custody of E.A.T.W.*, 168 Wn.2d 335, 338, 227 P.3d 1284 (2010)). We agree. The trial court did not apply the correct "actual detriment" standard to its custody determination.

We review custody decisions for abuse of discretion. *In re Marriage of Chandola*, 180 Wn.2d 632, 642, 327 P.3d 644 (2014). "A court's decision is manifestly unreasonable" if (1) "it is outside the range of acceptable choices, given the facts and the applicable legal standard"; (2) it "is based on untenable grounds if the factual findings are unsupported by the record"; and (3) it

---

[7] CP at 73 (FF 2.6).

[8] CP at 73 (FF 2.6).

[9] VRP (Aug. 9, 2013) at 143.

"is based on untenable reasons if it is based on an incorrect standard or the facts do not meet the requirements of the correct standard." *West v. Dep't of Licensing*, 182 Wn. App. 500, 516-17, 331 P.3d 72, *review denied*, 339 P.3d 634 (2014).

We review a trial court's statutory interpretation de novo. *Grieco v. Wilson*, 144 Wn. App. 865, 873, 184 P.3d 668 (2008), *aff'd*, *E.A.T.W.*, 168 Wn.2d 335. Because of the trial court's "unique opportunity to personally observe the parties," we will disturb a custody designation only when both the trial court's written and oral opinions demonstrate a failure to consider statutory requirements. *In re Marriage of Murray*, 28 Wn. App. 187, 189, 622 P.2d 1288 (1981). We do not review the trial court's credibility determinations or reweigh the evidence. *In re Welfare of C.B.*, 134 Wn. App. 942, 953, 143 P.3d 846 (2006).

## I. "ACTUAL DETRIMENT" STANDARD IN A NONPARENTAL CUSTODY ACTION

Chapter 26.10 RCW allows third parties to petition for child custody. "Such an award confers on the nonparental custodian the legal power to 'determine the child's upbringing,' to the exclusion of the natural parent." *In re Custody of C.C.M.*, 149 Wn. App. 184, 204, 202 P.3d 971 (2009) (quoting RCW 26.10.170). Parents, however, have a protected liberty interest in the custody of their children. *In re Custody of B.M.H.*, 179 Wn.2d 224, 235, 315 P.3d 470 (2013).

> In a custody dispute between parents and nonparents . . . the analysis must accommodate the natural parents' constitutionally protected priority right to the custody of their children. The general constitutional rule of "respect for family integrity" demands a substantive showing in a nonparental custody action of far more than a child's best interests.

*C.C.M.*, 149 Wn. App. at 204-05 (internal citations omitted) (quoting *In re Custody of A.C.*, 165 Wn.2d 568, 580, 200 P.3d 689 (2009) (J.M. Johnson, J., concurring)).

Therefore, a nonparent can obtain custody of a child only if (1) a parent is unfit, or (2) custody with a parent would result in "'actual detriment to the child's growth and development.'" *B.M.H.*, 179 Wn.2d at 235 (quoting *E.A.T.W.*, 168 Wn.2d at 338); *see also In re Custody of Shields*, 157 Wn.2d 126, 142-43, 136 P.3d 117 (2006). The showing required by the nonparent is substantial, and "only [under] 'extraordinary circumstances'" does there exist a compelling state interest that justifies interference with the integrity of the family and with parental rights. *Shields*, 157 Wn.2d at 145 (quoting *In re Marriage of Allen*, 28 Wn. App. 637, 649, 626 P.2d 16 (1981)); *see also B.M.H.*, 179 Wn.2d at 236. The nonparent's burden of proof is clear and convincing evidence. *C.C.M.*, 149 Wn. App. at 205.

"A parent is unfit if he or she cannot meet a child's basic needs, and in such cases, the State is justified in removing the child from the home and in certain cases, permanently terminating parental rights." *B.M.H.*, 179 Wn.2d at 236; *see also Shields*, 157 Wn.2d at 142-43. But Schoch did not argue that Zhang was an unfit parent. The issue at trial was whether Zhang's custody of Lh. would cause actual detriment to Lh.

Significantly, the "actual detriment" determination does not focus on the "best interests of the child." Facts that merely support a finding that nonparental custody is in the child's "best interests" are insufficient to award custody to the nonparent. *B.M.H.*, 179 Wn.2d at 237 (quoting *In re Custody of S.C.D.-L.*, 170 Wn.2d 513, 516-17, 243 P.3d 918 (2010)); *Shields*, 157 Wn.2d at 150. "A nonparent's capacity to provide a superior home environment to that which a parent can offer is not enough to outweigh the deference that is constitutionally owed to a natural, fit parent." *C.C.M.*, 149 Wn. App. at 204 (citing *Shields*, 157 Wn.2d at 144). Similarly, a nonparent cannot obtain custody of a child merely because the trial court finds that the nonparent would be a better

parent. *E.A.T.W.*, 168 Wn.2d at 346-47. And "actual detriment" does not include that the child will be deprived of "wonderful opportunities" as a member of the nonparent's family. *In re Custody of Anderson*, 77 Wn. App. 261, 266, 890 P.2d 525 (1995).

## II. THE TRIAL COURT'S CUSTODY DECISION

Although the trial court purported to apply the "actual detriment" standard, entering a written finding that "[Lh.'s] residence with [Zhang] would be an environment detrimental to her continued growth and welfare,"[10] its oral ruling clearly shows that the trial court based its decision solely on a consideration of what was in Lh.'s "best interest[s]"[11]. Therefore, we hold that the trial court erred in applying the wrong legal analysis in its custody decision.

### A. Consideration of Trial Court's Oral Decision

Despite the trial court's finding that living with Zhang would be "detrimental"[12] to Lh., the trial court's oral rulings clearly show that it was applying a "best interests of the child" standard and not an "actual detriment" standard. Therefore, we must reverse the trial court's custody ruling.

Ordinarily, we will not look behind a trial court's oral rulings to contradict the trial court's written ruling. *In re Marriage of Getz*, 57 Wn. App. 602, 605 n.4, 789 P.2d 331 (1990). But we may consider a trial court's oral decision so long as it is not inconsistent with the trial court's written findings and conclusions. *State v. Kull*, 155 Wn.2d 80, 88, 118 P.3d 307 (2005); *see Getz*, 57 Wn. App. at 605 n.4 (we may resolve an ambiguity in a trial court's written decision by looking

---

[10] CP at 73 (FF 2.6).

[11] VRP (Aug. 9, 2013) at 143.

[12] CP at 73 (FF 2.6).

10

to its oral ruling). And oral findings that the trial court expressly incorporates it into its findings of fact, conclusions of law, and judgment are binding. *State v. Truong,* 168 Wn. App. 529, 539 n.6, 277 P.3d 74, *review denied,* 175 Wn.2d 1020 (2012).

Here, the trial court's written findings of fact and conclusions of law do not state what standard it applied in its custody determination. The trial court entered a finding regarding detriment, but the trial court also entered a finding that "[i]t is in the best interest[s] of the child" to be placed in Schoch's custody. CP at 74 (FF 2.7). Therefore, because the written findings of fact and conclusions of law were ambiguous, we will consider the trial court's oral rulings to ascertain what standard it was applying.

In its oral ruling, the trial court unequivocally applied the "best interests" standard:

> *Now, the statute says I do what's in the best interests of the child.* I do believe at this time for the following reasons, education, age, personal life, i.e., her athletic involvement, school involvement and other matters, all involving that, her issues with 4H, and other issue of that, that *I do believe it's in the best interests of the child that the custody at this time be awarded to Mr. Schoch.*

VRP (July 30, 2013) at 108 (emphasis added). The trial court did not apply or even reference the correct standard—"actual detriment" to the child.

At the presentation hearing on August 9, 2013, Zhang objected to Schoch's proposed order that included the finding regarding "detriment" because that finding had not been part of the trial court's oral ruling. VRP (Aug. 9, 2013) at 136. The trial court explained its oral ruling:

> Now, when you come to the terminology of detrimental and best interests, isn't that what you're doing is evaluating? *You are evaluating two people and you come to the conclusion that this one, quote, is in the best interests of the child.* If you remove that child from the environment that's in the best interests of the child isn't that detrimental?

VRP (Aug. 9, 2013) at 143 (emphasis added).

11

In addressing whether Zhang could properly provide for Lh., the trial court stated:

> I don't think—we're not sitting here saying mom is running some sweat shop or mom's over here with a garbage dump of a house. We're not saying that. *We're saying that it's in the best interests of the child* that the finding of the Court, where this Court—kid is going to live and go to school—and by the way, she's only going to do so for about three or four years here and then she's off to college and guess who's probably going to pay for the college, the guy she's living with.

VRP (Aug. 9, 2013) at 143 (emphasis added).

The trial court then stated:

> Now, let's don't get lost in semantics about their finding detrimental. I'm not sitting here trying to denigrate [Zhang], Mr. Campbell. The law says you've got to do one to get to the other and that's all I am telling you. If this kid was down there in California with mom I don't have any problem that the kid would be fed and clothed and sheltered or whatever. But what have you done? *You have then taken the kid from the environment that a Court found was in the best interest of the child,* that's where the child should continue for the next three or four years of her life. And then you've got all this other stuff, her education, her friends, her peers . . . ."
>
> . . .
>
> I'm the one who had to wrestle with this and make the decision and it wasn't pleasant. . . . But you know what, *you look at the statute for this purpose for that part this proceeding, it's the best interests of the child, period.*

VRP (Aug. 9, 2013) at 143-45 (emphasis added).

The trial court's oral comments leave no doubt that it awarded custody based on Lh.'s "best interests." In addition, the trial court erroneously stated that the applicable statute required the court to apply a "best interests" standard. VRP (July 30, 2013) at 108; *see also* VRP (Aug. 9, 2013) at 145. The trial court abused its discretion when it applied this standard because the proper standard is whether remaining with the parent would cause "actual detriment to the child's growth and development." *B.M.H.,* 179 Wn.2d at 235 (quoting *E.A.T.W.,* 168 Wn.2d at 338).

No. 46466-7-II

We hold that the trial court erred in applying the wrong legal standard in its custody decision. Therefore, we reverse the trial court's award of custody to Schoch.

B. The Trial Court Changed Lh.'s Last Name

In the custody decree, the trial court changed Lh.'s last name to Schoch. Zhang argues that this relief was neither requested nor authorized under RCW 4.24.130.[13] In a custody action, the party desiring a change of name of his or her minor child must set forth the reasons for the change under RCW 4.24.130. *Daves v. Nastos*, 105 Wn.2d 24, 29, 711 P.2d 314 (1985). But in order to change the child's name, the trial court must enter a finding that the name change is in the child's best interests. *Daves*, 105 Wn.2d at 29-30. The trial court failed to enter any such finding in this case. Therefore, we reverse the trial court's order changing Lh.'s last name to Schoch.

---

[13] RCW 4.24.130(1) states: "Any person desiring a change of his or her name or that of his or her child or ward, may apply therefor to the district court of the judicial district in which he or she resides, by petition setting forth the reasons for such change; thereupon such court in its discretion may order a change of the name and thenceforth the new name shall be in place of the former."

13

### III. DE FACTO PARENTAGE CLAIM

Schoch argues that the trial court erred in denying his motion to amend to add a de facto parentage claim. We agree.

Motions to amend "should be freely granted when justice so requires." *Chadwick Farms Owners Ass'n v. FHC LLC*, 166 Wn.2d 178, 202, 207 P.3d 1251 (2009); CR 15(a). We will not overturn a trial court's refusal to grant a motion to amend pleadings except for manifest abuse of discretion. *Greenhalgh v. Dep't of Corr.*, 170 Wn. App. 137, 143, 282 P.3d 1175 (2012). We reverse a trial court's decision for abuse of discretion if it "'is manifestly unreasonable, exercised on untenable grounds, or exercised for untenable reasons,' with the last category including errors of law." *Humphrey Indus., Ltd. v. Clay Street Assocs., LLC*, 170 Wn.2d 495, 506, 242 P.3d 846 (2010) (quoting *Noble v. Safe Harbor Family Pres. Trust*, 167 Wn.2d 11, 17, 216 P.3d 1007 (2009)).

The trial court did not state a reason for denying the motion to amend. At the time of the motion, however, the case law could have been interpreted as precluding a former stepparent from becoming a de facto parent. *See In re Parentage of M.F.*, 168 Wn.2d 528, 532, 228 P.3d 1270 (2010). Because there are no other apparent reasons to deny the motion, we assume that the trial court determined that the amendment would be futile under existing law.

Our Supreme Court recently clarified that *M.F.* "did not preclude all stepparents as a class from being de facto parents." *B.M.H.*, 179 Wn.2d at 243 (citing *M.F.*, 168 Wn.2d 528). At the time that the trial court denied Schoch's motion to amend, *B.M.H.* had not yet been decided. Nevertheless, we hold that the trial court abused its discretion in denying the motion based on the

14

now-rejected conclusion that he did not qualify for de facto parentage as a former stepparent. We hold that on remand, Schoch may pursue a de facto parentage claim based on *B.M.H.*

IV. ATTORNEY FEES AND COSTS

Finally, Zhang requests reasonable attorney fees on appeal based on her need and Schoch's ability to pay. RCW 26.10.080. This statute provides, in part: "Upon any appeal, the appellate court may, in its discretion, order a party to pay for the cost to the other party of maintaining the appeal and attorney's fees in addition to statutory costs." RCW 26.10.080. Therefore, we have the authority, "after considering the financial resources of all parties," to award attorney fees to Zhang. RCW 26.10.080.

Zhang's only source of income was spousal maintenance, which has ended. Schoch is self-employed, owns two businesses, and has available assets. Given their income disparity and expenses, Zhang has a financial need and Schoch has the ability to pay. We award Zhang reasonable attorney fees on appeal in the amount of $10,000.

CONCLUSION

We hold that: (1) The trial court abused its discretion when it erroneously applied a "best interests of the child" standard, equating it with the "detriment to the child" standard; (2) the trial court erred by changing the child's last name; and (3) the trial court abused its discretion in denying Schoch's motion to add a de facto parentage. Accordingly, we vacate the trial court's non-parental custody decree and residential schedule, and reverse and remand for a new trial. We also grant Zhang's request that the matter be heard by a different superior court judge. On remand, Schoch may pursue a de facto parentage claim. We award Zhang reasonable attorney fees and costs on

No. 46466-7-II

appeal in the amount of $10,000 based on her need and Schoch's ability to pay.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Sutton, J.

We concur:

Johanson, C.J.

Maxa, J.