227 P.3d 1284 (2010)
168 Wash.2d 335
In re CUSTODY OF E.A.T.W. and E.Y.W., Children,
Vito A. and Yasuko Grieco, Petitioners,
v.
Sachi Wilson, Respondent.
No. 81945-9.
Supreme Court of Washington, En Banc.
February 25, 2010.
*1285 Catherine Wright Smith, Valerie a Villacin, Edwards Sieh Smith & Goodfriend P.S., Cynthia *1286 B. Whitaker, Law Offices of Cynthia B. Whitaker, Seattle, WA, for Petitioners.
Patricia S. Novotny, Nancy Hawkins, Attorneys at Law, Seattle, WA, for Respondent.
J.M. JOHNSON, J.
¶ 1 Vito and Yasuko Grieco brought a nonparental custody action for permanent custody of their two grandsons, E.A.T.W. and E.Y.W., under chapter 26.10 RCW. The superior court found adequate cause to proceed to a hearing on the Griecos' petition based solely on the boys being in the Griecos' custody for several years. Sachi Wilson, the boys' father, argues RCW 26.10.032 also requires the Griecos to set forth facts establishing cause for an order on the merits before any hearing may occur.
¶ 2 We hold that RCW 26.10.032 requires a superior court judge to deny a hearing on a motion for a third party custody order unless the nonparent submits an affidavit (1) declaring the child is not in the physical custody of one of its parents or neither parent is a suitable custodian and (2) setting forth facts supporting the requested custody order. The facts supporting the requested custody order must show adequate cause that the parent is unfit or that placing the child with the parent would result in actual detriment to the child's growth and development. We remand to the superior court for an adequate cause determination based on the correct legal standard.

FACTS AND PROCEDURAL HISTORY
¶ 3 JoAnn Grieco and Sachi Wilson (formerly known as Thornton Arnold Wilson) married and had two children. E.A.T.W. was born in 1990 and E.Y.W. was born in 1995. JoAnn was diagnosed with breast cancer in 1995, and by 2000 her cancer had metastasized. The couple separated in August 2002, and JoAnn and the children remained in the family residence. Wilson continued to have contact with the boys and stayed involved in their lives.
¶ 4 During the summer of 2003, JoAnn's illness became disabling and her parents, the Griecos, moved in with JoAnn to help take care of her and the boys. Wilson claims he was rarely able to spend time with his sons after the Griecos moved in with JoAnn. However, after JoAnn temporarily recovered, her parents moved out. JoAnn and Wilson reached an agreement allowing him to spend more time with his sons. In September 2003, Wilson moved to San Diego, California, with a woman he had known for a number of years.
¶ 5 In 2004, Wilson filed for dissolution of marriage. However, he decided not to pursue the dissolution after JoAnn had another recurrence of cancer. Accordingly, no parenting plan was ever established. The Griecos moved back in with their daughter and grandsons in 2004 and remained with them until JoAnn's death in October 2004.
¶ 6 After JoAnn's death, Wilson consented to allow the boys to continue to live in the family home with the Griecos in order to provide stability and minimal disruption. In November 2004, Wilson prepared and signed a notarized authorization allowing the Griecos to make all medical care decisions regarding his sons.[1] Clerk's Papers (CP) at 10. In February 2005, Wilson signed an authorization giving the Griecos authority over school and activities matters. CP at 13. However, the authorization specifically stated it should not be construed as a relinquishment of the father's rights as a parent. Id.
¶ 7 According to Wilson, the Griecos marginalized him in the boys' lives and tried to withhold his sons from him. The Griecos contend Wilson would demand to see the boys without giving them sufficient notice. In order to address these and other problems, Wilson and the Griecos entered into an "Agreement Regarding the Welfare and Residential Placement of [E.A.T.W. and E.Y.W.]" in February 2006. CP at 16-19. They agreed that under the existing circumstances, the boys should continue to stay in the family home with the Griecos. They also agreed that it was in the boys' best interests to have regular contact and liberal communication with Wilson. It was agreed that Wilson's contact information should appear in, *1287 and that he should have access to, all medical and school records, and that the Griecos would seek his input before making any major decisions about the boys. However, this agreement did little to alleviate the earlier problems, and the parties continued to disagree over Wilson's communication and contact rights.
¶ 8 In October 2006, the Griecos filed a petition to establish de facto parentage or nonparental custody under chapter 26.10 RCW. In regard to nonparental custody, the petition alleged the boys were not in the physical custody of either parent and had been in the sole custody of the Griecos since the death of JoAnn in 2004. The petition cited the February 2006 agreement and noted that the parties had agreed the children should live with the grandparents. The petition requested an order finding adequate cause to proceed with the nonparental custody action.
¶ 9 The Griecos filed a motion and declaration asking the court to find adequate cause to proceed with the nonparental custody action. The declaration in support of the motion noted Wilson's move to California in 2002 and that the Griecos had cared for the boys since 2003 (exclusively since JoAnn's death in 2004). The Griecos also relied on the medical and school authorizations, as well as the 2006 agreement. In response, Wilson argued that although he had agreed the boys should continue to live with their grandparents after JoAnn's death, the situation was not permanent.
¶ 10 A superior court commissioner found adequate cause for a hearing on the nonparental custody petition. The commissioner's order stated that adequate cause was established "based on the fact that the children are in the physical custody of the grandparents and have been for a few years and it would be detrimental to remove them from the grandparents [sic] care." CP at 53. Wilson sought revision of this order but the court denied the motion, concluding that the "[c]ourt only needs to find, under [chapter] 26.10[RCW], that [the] children are not in the custody of parents to find adequate cause." CP at 61. The order also stated that because the "[c]ourt cannot determine issues based on written materials[,] trial is necessary." Id.
¶ 11 Wilson sought discretionary review of the commissioner's order and the superior court's denial of the motion to revise. The Court of Appeals granted discretionary review and denied the Griecos' motion to modify the ruling granting review. The Griecos then moved to supplement the adequate cause findings in the nonparental custody action. Wilson filed a motion to strike the Griecos' request, and the superior court commissioner granted Wilson's motion. CP at 226-27. The Griecos filed a motion to revise the commissioner's decision, which was denied by the superior court. The court reiterated that it had found adequate cause based on the boys' being in the Griecos' custody, which it said was legally sufficient under the statute. The court stated it could not make a finding regarding actual detriment based on the parties' affidavits. See Verbatim Report of Proceedings (Aug. 9, 2007) at 20-21.
¶ 12 On review, the Court of Appeals determined the trial court erroneously interpreted the requirements of RCW 26.10.032 by determining the Griecos established adequate cause based solely on the fact that the children were not in the physical custody of a parent. The court reversed the superior court's order finding adequate cause to proceed with the nonparental custody action under chapter 26.10 RCW and dismissed that claim.[2]Grieco v. Wilson, 144 Wash.App. 865, 184 P.3d 668 (2008). The Griecos appealed and we granted review. In re Custody of Wilson, 165 Wash.2d 1015, 199 P.3d 411 (2009). We agree with Division One of the Court of Appeals that RCW 26.10.032 cannot be satisfied solely by lack of the parent's physical custody of the children and remand to the superior court for an adequate cause determination based on the appropriate standard.

ANALYSIS
¶ 13 In 2003, the legislature amended the nonparental custody statute, requiring a threshold determination of adequate cause *1288 prior to a hearing on a third party nonparental custody petition. Under RCW 26.10.032:
(1) A party seeking a custody order shall submit, along with his or her motion, an affidavit declaring that the child is not in the physical custody of one of its parents or that neither parent is a suitable custodian and setting forth facts supporting the requested order. The party seeking custody shall give notice, along with a copy of the affidavit, to other parties to the proceedings, who may file opposing affidavits.
(2) The court shall deny the motion unless it finds that adequate cause for hearing the motion is established by the affidavits, in which case it shall set a date for hearing on an order to show cause why the requested order should not be granted.
(Emphasis added.) We must determine what requirement is imposed on third party petitioners by this statute. Wilson argues, and Division One of the Court of Appeals held, that under RCW 26.10.032 the nonparent "must set forth factual allegations that, if proved, would establish that the parent is unfit or the child would suffer actual detriment if placed with the parent" and "either that the child is not in the physical custody of a parent or that neither parent is a suitable custodian." Grieco, 144 Wash.App. at 875, 184 P.3d 668. The Griecos argue, relying in part on a decision from Division Three of the Court of Appeals, that RCW 26.10.032 may be satisfied by a mere showing that the child is not in the custody of either parent in order to meet the adequate cause threshold. See In re Custody of B.J.B., 146 Wash.App. 1, 189 P.3d 800 (2008), review denied, 165 Wash.2d 1037, 205 P.3d 131 (2009). Both courts claim a plain reading of the statute.
¶ 14 Our decision hinges on the proper statutory construction of RCW 26.10.032. The meaning of a statute is a question of law and is reviewed de novo. In re Custody of Shields, 157 Wash.2d 126, 140, 136 P.3d 117 (2006). Our primary goal in construing a statute is to determine and give effect to the intent of the legislature, State ex rel. M.M.G. v. Graham, 159 Wash.2d 623, 632, 152 P.3d 1005 (2007), keeping in mind that the legislature's powers are limited by boundaries imposed by our state and the federal constitutions. We begin our analysis by examining the text of the statute. Id. If the text is clear and unambiguous on its face, we do not resort to statutory construction principles, such as legislative history, even if we believe the legislature intended something else but did not adequately express it. Am. Cont'l Ins. Co. v. Steen, 151 Wash.2d 512, 518, 91 P.3d 864 (2004) (citing State v. Watson, 146 Wash.2d 947, 955, 51 P.3d 66 (2002)).
¶ 15 The plain meaning of a statute is discernable by examining everything the legislature has said in the statute itself and any related statutes that reveal legislative intent regarding the provision at issue. Cornhusker Cas. Ins. Co. v. Kachman, 165 Wash.2d 404, 409, 198 P.3d 505 (2008). The meaning of words in a statute is not determined from those words alone but from all the terms and provisions of the act as they relate to "`"the subject of the legislation, the nature of the act, the general object to be accomplished and consequences that would result from construing the particular statute in one way or another."'" Burns v. City of Seattle, 161 Wash.2d 129, 146, 164 P.3d 475 (2007) (quoting State v. Krall, 125 Wash.2d 146, 148, 881 P.2d 1040 (1994) (quoting State v. Huntzinger, 92 Wash.2d 128, 133, 594 P.2d 917 (1979))).
¶ 16 If a statute is susceptible to more than one reasonable interpretation, it is considered ambiguous. Wingert v. Yellow Freight Sys., Inc., 146 Wash.2d 841, 852, 50 P.3d 256 (2002). However, a statute is not ambiguous merely because we may conceive of different interpretations. State v. Tili, 139 Wash.2d 107, 115, 985 P.2d 365 (1999).

Statutory Interpretation
¶ 17 We agree with Division One of the Court of Appeals that the language of RCW 26.10.032 is not ambiguous. The statute first requires a petitioner seeking a nonparental custody order to submit an affidavit declaring that the child is not in the physical custody of one of his or her parents or, in the alternative, that neither parent is a suitable custodian. RCW 26.10.032(1). The statute then requires the nonparent to set forth facts *1289 supporting the requested order. Id. As indicated by the statute, the "requested order" is a permanent custody order. Id. Therefore, in addition to alleging that a child is not in the physical custody of the parent or that the parent is not a suitable custodian, the nonparent must also set forth facts supporting the custody order. The superior court may ultimately issue a custody order granting the nonparent custody only if the court finds that the parent is unfit or placement with the parent would result in actual detriment to the child's growth and development. Shields, 157 Wash.2d at 142-43, 136 P.3d 117. This standard is necessary in order to adhere to the constitutional mandate that deference be accorded parents in child custody disputes with nonparents. Id. The fact that a parent does not have physical custody of the child, standing alone, does not show that the parent is unfit or that actual detriment would result from placing the child with the parent. Accordingly, merely setting forth facts that the child is not in the custody of a parent is not sufficient to provide adequate cause for a hearing. Something more is required: the nonparent must set forth facts showing the custody order should be granted in accordance with the standard articulated in Shields. The superior court is mandated to deny the nonparent's motion if it does not find adequate cause for hearing the motion based on the affidavits. See RCW 26.10.032(2).
¶ 18 This interpretation of the statute is in harmony with the United States Constitution. The Griecos' proffered interpretation, in contrast, is injurious to a well-established constitutional right. The United States Supreme Court has "long recognized that a parent's interests in the nurture, upbringing, companionship, care, and custody of children are generally protected by the Due Process Clause of the Fourteenth Amendment." Troxel v. Granville, 530 U.S. 57, 77, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000); see also Washington v. Glucksberg, 521 U.S. 702, 720, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997); Wisconsin v. Yoder, 406 U.S. 205, 232-33, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972); Pierce v. Society of the Sisters of the Holy Names of Jesus and Mary, 268 U.S. 510, 534-35, 45 S.Ct. 571, 69 L.Ed. 1070 (1925); Meyer v. Nebraska, 262 U.S. 390, 399, 401, 43 S.Ct. 625, 67 L.Ed. 1042 (1923).
¶ 19 In Troxel, the United States Supreme Court affirmed this court's judgment in In re Custody of Smith, 137 Wash.2d 1, 969 P.2d 21 (1998), that constitutionally protected parental rights were violated by a statute allowing a nonparent to wrest custody of a child from a parent based solely on the court's findings regarding the child's best interests. Something more is required than the court's judgment that it could make a better decision than parents concerning the upbringing of children. See Troxel, 530 U.S. at 73, 120 S.Ct. 2054. That "something more" in this case is fulfilled by RCW 26.10.032(1)'s second requirement: petitioners must set forth facts in affidavits that, if true, would show that the parent is unfit or that actual detriment to the child's growth and development will occur if the child remains in the parent's custody.[3]
¶ 20 Just as parents' constitutional rights are long established, it is also true that children have rights regarding their well-being that are important factors properly guiding courts' custody decisions.[4] Recognition of these rights is not offensive to the *1290 constitution. Just as it is impermissible to interfere with a parent's custodial relationship without a showing of adequate cause, it is likewise harmful to force children to remain in the custody of parents who are unfit or who present an actual detriment to the children's growth and development. Shields, 157 Wash.2d at 142-43, 136 P.3d 117. RCW 26.10.032 properly balances these constitutional and statutory rights and interests by requiring a nonparent petitioner to submit an affidavit (1) declaring that the child is not in the physical custody of one of his or her parents or that neither parent is a suitable custodian and (2) alleging specific facts that, if true, will establish a prima facie case supporting the requested order. These requirements must be satisfied before the courthouse doors will open to the third party petitioner. This statute, as interpreted herein, is in accord with this court's and the United States Supreme Court's holdings in Troxel, Smith, and Shields. Children must be protected, and to that end outside parties may challenge parental custody, but constitutionally protected parental rights may not be infringed merely because of a finding that someone else could do a better parenting job.
¶ 21 Finally, we note that this reading of the statute is supported by the language of a similar statute, RCW 26.09.270, which governs temporary custody orders and temporary parenting plan modifications of a custody decree or parenting plan. That statute provides:
A party seeking a temporary custody order or a temporary parenting plan or modification of a custody decree or parenting plan shall submit together with his motion, an affidavit setting forth facts supporting the requested order or modification and shall give notice, together with a copy of his affidavit, to other parties to the proceedings, who may file opposing affidavits. The court shall deny the motion unless it finds that adequate cause for hearing the motion is established by the affidavits, in which case it shall set a date for hearing on an order to show cause why the requested order or modification should not be granted.
¶ 22 The 2003 enactment of RCW 26.10.032 aligned these two statutes. Both allow custodial relationships to be altered, and both require the moving party to show via affidavits that adequate cause for hearing the underlying motion exists. Most importantly for our purposes today, RCW 26.09.270 requires that affidavits "set[] forth facts supporting the requested order or modification." RCW 26.09.270. Thus, at the very minimum, adequate cause under RCW 26.09.270 means a showing "sufficient to support a finding on each fact that the movant must prove in order to modify; otherwise, a movant could harass a nonmovant by obtaining a useless hearing." In re Marriage of Lemke, 120 Wash.App. 536, 540, 85 P.3d 966 (2004).
¶ 23 The language of RCW 26.09.270 parallels RCW 26.10.032 in requiring that the moving party submit facts supporting the requested order or modification in order to proceed to a hearing on the merits. Though these are different statutes, their overlapping subject matter and language strongly suggest the legislature intended their identically-worded show cause requirements to be the same: the movant must set forth facts supporting the requested order. See Cornhusker, 165 Wash.2d at 409, 198 P.3d 505.[5] The primary purpose of this threshold requirement for adequate cause in both statutes is, among other things, to prevent a useless hearing. Lemke, 120 Wash.App. at 540, 85 P.3d 966. A hearing under chapter 26.10 RCW is by its very nature disruptive to families, including parents and children. A useless hearing is thus an unnecessary disruption and an evil to be avoided. The statutory standard for adequate cause requiring specific facts to be set forth supporting a custody order accomplishes this purpose. Although RCW 26.10.032 requires different *1291 findings in order to establish adequate cause, the identical language of RCW 26.09.270 supports the plain reading advocated by Wilson.

Conclusion
¶ 24 We hold that RCW 26.10.032 requires a superior court judge to deny a motion for a hearing on a third party custody order unless the nonparent submits an affidavit (1) declaring that the child is not in the physical custody of one of its parents or that neither parent is a suitable custodian and (2) setting forth facts supporting the requested custody order. The facts supporting the requested custody order must show that the parent is unfit or that placing the child with the parent would result in actual detriment to the child's growth and development.

Remedy
¶ 25 We must also decide the appropriate remedy. The Court of Appeals reviewed the petition and determined it should be dismissed. Grieco, 144 Wash.App. at 875-77, 184 P.3d 668. However, this decision was based on the contents of a petition that was based on an incorrect interpretation of the law. The superior court judge similarly made her adequate cause determination based on this misunderstanding of the statute  that the Griecos needed to allege only that the children were not in the physical custody of Wilson.
¶ 26 We find a remand to the superior court to be the appropriate remedy.[6] This would be in line with our reasoning in In re Parentage of Jannot, 149 Wash.2d 123, 127, 65 P.3d 664 (2003), where we noted that "a trial judge is in the best position to assign the proper weight to each of the varied factors raised by the submitted affidavits in a particular case." We decline to take the place of the trial court in making this decision.
¶ 27 Whether the Griecos should be permitted to amend their petition or supporting affidavit is another question.[7] We are not in a position to know if the Griecos could include additional facts that would show that Wilson is unfit or that placing the children in Wilson's custody would result in actual detriment. Wilson argues a "do-over" is not appropriate as it would drag out the custody dispute. But we are faced with conflicting goals served by the nonparental custody statute. The legislature prescribes finality and quick resolution, but the purpose of the statute would be undermined if children were placed with an unfit parent or in a situation resulting in actual detriment merely because of a remediable deficiency in the petition. Although the rights of parents are strongly protected, so are the rights of children.
¶ 28 The superior court judge is in the best position to determine whether an amended petition or affidavits are appropriate after weighing these interests and taking into account facts that are not in the limited record here.

RESULT
¶ 29 In order to proceed to a hearing on the merits of a nonparental custody proceeding, the petition and affidavits must show that either the child is not in a parent's custody or the parent is unsuitable and set forth facts supporting the requested final order.
¶ 30 Accordingly, we remand to the superior court for an adequate cause determination using the proper legal standard.
WE CONCUR: BARBARA A. MADSEN, Chief Justice, SUSAN OWENS, CHARLES W. JOHNSON, MARY E. FAIRHURST, RICHARD B. SANDERS, DEBRA L. STEPHENS, and TOM CHAMBERS, Justices and KAREN G. SEINFELD, Justice Pro Tem.
NOTES
[1] Wilson is an attorney.
[2] The decision had no impact on the Griecos' alternative de facto parent theory.
[3] Under the Griecos' interpretation of the statute, a parent leaving a child in the temporary custody of a nonparent for reasons such as military service, extended business travel, or some sort of temporary incapacity could be subjected to a hearing without the nonparent providing any facts allowing the nonparent to be awarded custody. Such a result would be contrary to the history and intent of the statute, as well as common sense.
[4] See, e.g., RCW 13.34.020, which reads:

The legislature declares that the family unit is a fundamental resource of American life which should be nurtured. Toward the continuance of this principle, the legislature declares that the family unit should remain intact unless a child's right to conditions of basic nurture, health, or safety is jeopardized. When the rights of basic nurture, physical and mental health, and safety of the child and the legal rights of the parents are in conflict, the rights and safety of the child should prevail. In making reasonable efforts under this chapter, the child's health and safety shall be the paramount concern. The right of a child to basic nurturing includes the right to a safe, stable, and permanent home and a speedy resolution of any proceeding under this chapter.
[5] This is consistent with the well-recognized standard generally applicable at adequate cause or show cause hearings. See, e.g., RCW 10.14.040(1) (noting that a petition for a protection order must allege the existence of harassment and be accompanied by a sworn affidavit stating the specific facts and circumstances from which relief is sought), .080(3) (distinguishing later hearing on the merits where a preponderance of the evidence must support the alleged facts).
[6] We followed a similar course of action in Shields, 157 Wash.2d at 149-50, 136 P.3d 117.
[7] Comparing the situation to a CR 12(b)(6), CR 12(c) or summary judgment motion is inappropriate based on the more specific requirements of RCW 26.10.032, the constitutional protections of the father, and the consideration of the welfare of the children.