**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION  II**

| | |
|---|---|
| In the Matter of the De Facto Parentage of: | No.  52042-7-II |
| T.D.D., | |
| A minor child, | UNPUBLISHED OPINION |
| T.D., | |
| Petitioner, | |
| and | |
| R.D.; STATE OF WASHINGTON, DEPARTMENT OF SOCIAL AND HEALTH SERVICES, | |
| Respondents. | |

LEE, J. — T.D. appeals the denial of her motion for an adequate cause determination and the dismissal of her Petition for Decree of De Facto Parentage.  T.D. sought to be a de facto parent of T.D.D., the adopted son of T.D.'s wife, R.D.  T.D. argues that the superior court erred in (1) concluding that T.D. failed to establish adequate cause for a trial on her de facto parentage petition, (2) concluding that a finding of abuse and neglect automatically defeats a prima facie case for de facto parentage, and (3) vacating the order of indigency.  We reverse and remand to the superior court for further proceedings consistent with this opinion.

FACTS

T.D.D. first came into the care of the Department of Social and Health Services when he was two years old. He was placed in the care of R.D., a relative, in 2009. R.D. later adopted T.D.D. when he was five years old in August 2012.

T.D. moved in with R.D. and T.D.D. in January 2012. T.D. became the primary caregiver for T.D.D. R.D. and T.D. got married in February 2015. The Department removed T.D.D. from the home in September 2015 because of abuse and neglect, and T.D.D. has been in the Department's care since that time.

On September 22, 2015, the Department filed a dependency action against R.D. T.D. could not participate in the dependency action because she did not have any parental rights as to T.D.D. On March 22, 2017, the Department filed for Termination of R.D.'s parental rights.

In September 2015, after an investigation of T.D. relating to her care of T.D.D., the Department entered an administrative finding that T.D. had abused and neglected T.D.D. The Department's finding was based on her physical abuse of T.D.D.

On April 13, 2017, T.D. filed her de facto parentage petition, relying on *In re Parentage of L.B.*, 155 Wn.2d 679, 122 P.3d 161 (2005), *cert. denied*, 547 U.S. 1143 (2006). She sought legal status as a de facto parent so that she could participate in T.D.D.'s dependency proceedings. In her petition, T.D. claimed that she had fostered a parent-like relationship with T.D.D. She also claimed that she and T.D.D. had lived in the same household from January 2012 until the child went into foster care in September 2015, and that she had "assumed obligations of parenthood through marriage to Respondent [R.D.] without any expectation of financial compensation." Br. of App. Appx. at 3. She further claimed that she "has been in a parental role for a length of time,

more than six years, sufficient to establish with the child a bonded, dependent relationship, parental in nature."[1]  Br. of App. Appx. at 3.

On April 26, 2017, the court granted "concurrent jurisdiction" over the petition for de facto parentage with T.D.D.'s dependency action to allow the court hearing the dependency case to also decide the de facto parentage case.  Clerk's Papers (CP) at 3.  The court later noted with regard to the de facto parentage case that

> [m]odifications of child custody actions and third party custody actions require that the court find adequate cause to proceed as a preliminary matter. RCW 26.09.270; RCW 26.10.032. Although de facto parentage actions don't fall under these procedural statutes, it appears to me that a similar procedure should be followed.
>
>     . . . .
>
> The procedure set forth in paragraphs seven through twelve, *In re Custody of B.M.H.*, 179 Wn.2d at 230-32, contemplates a pre-trial motion hearing similar to the adequate cause procedure.

CP at 11.

At the hearing to determine adequate cause, the only disputed issue was whether T.D. had been in a parental role for a length of time sufficient to have established with T.D. a bonded, dependent relationship that was parental in nature.  The following evidence was presented by the parties.

---

[1]  T.D. alternatively requested psychological parent status under *In re Dependency of J.H.*, 117 Wn.2d 460, 815 P.2d 1380 (1991).  She claimed that she "cared for the child's physical and emotion needs for affection and care on a day-to-day basis, establishing a psychological parent status with the child."  Br. of App. Appx. at 4.  However, the superior court did not rule on this alternative request and T.D. does not appeal this issue.  Therefore, we do not address this issue.

A.     EVIDENCE SUBMITTED IN SUPPORT OF MOTION FOR ADEQUATE CAUSE DETERMINATION

T.D. submitted declarations from herself, R.D., and close friends who have spent time with the family. The declarations showed that T.D. had been in T.D.D.'s life for seven years. T.D. did the cooking, and she and R.D. share responsibility for other household chores. T.D. provided for the family financially as well. These declarations also showed that T.D. helped T.D.D. with his homework, dropped him off at school, cooked for him, and enforced a bed time. T.D. and R.D. were united in their parenting decisions, and both R.D. and T.D. tried to provide everything for T.D.D. R.D. declared that "[T.D.] absolutely assumed the obligations of parenting [T.D.D.] without any expectation of financial compensation." CP at 16.

T.D. and R.D. both supported T.D.D. emotionally. They would calm him down. T.D. noted that, "[T.D.D.] comes to me for affection, especially, if he's sick. He comes to both [R.D.] and myself for comfort." CP at 18. One declaration stated, "I have witnessed their struggles with [T.D.D.], as any parent has with a child, and they handle those challenges well." CP at 28. The family was normal and a close family unit.

The declarations also described the bond between T.D. and T.D.D. T.D. declared that T.D.D. began calling her mom. R.D. declared "The bond I see between [T.D.] and [T.D.D.] is like any mother and son. The two of them are no different than how [T.D.D.] and I interact. [T.D.D.] really did take to [T.D.] quickly and is very bonded with her." CP at 16. T.D.D. "seemed to really look up to [T.D.] and had a real love for her." CP at 22.

B.       THE DEPARTMENT'S RESPONSE CHALLENGING ADEQUATE CAUSE DETERMINATION

The Department submitted evidence regarding a determination of abuse and neglect of T.D.D. by T.D. Kathryn Eddy, a Department social worker, stated in a declaration that before T.D.D.'s removal, T.D. was the primary caregiver for T.D.D. T.D. attended T.D.D.'s doctor's appointments and provided inaccurate reports to the medical professionals about T.D.D.'s health. This led to the doctors prescribing several medications and laxatives that T.D.D. did not need. T.D. would speak in very negative terms about T.D.D. to school staff, friends, and Department staff. "[R.D.] allowed [T.D.] to abuse [T.D.D.] and continues to choose her relationship with [T.D.] over that of her son." CP at 35. T.D. received "a [f]ounded finding of abuse and neglect." CP at 36.

As to T.D.D., Eddy stated that when he was taken away from T.D. initially, T.D.D. was "significantly underweight with protruding bones and bruising on his body." CP at 36. After removal, T.D.D. no longer took any medications and his "behaviors have significantly decreased from when [T.D.D.] was first placed into care." CP at 36.

Molly Rowe, another Department social worker, stated in a declaration that T.D.D. told her that he wants to stay with his foster parents. Rowe stated that T.D.D. said this without any prompting from her. Additionally, T.D.D. stated that he does not feel safe with R.D. and T.D. "[He] is very anxious about his circumstances and the unknown outcome of where he will live permanently." CP at 34.

The Department acknowledged that T.D. participated in services to reduce the safety threats in the home. But the Department felt that the abuse and neglect would resume if T.D.D. were returned to T.D. "[S]he has failed to acknowledge or understand the significant role she

played in the removal of [T.D.D.] from his mother and the family home." CP at 36. Rowe also

noticed that "[R.D.] did not accept responsibility for why [T.D.D.] was removed from her care,

and [T.D.] did not accept any responsibility, either." CP at 34. When Rowe met with R.D. and

T.D., she noted that questions directed at R.D. were answered by T.D.

C.    THE SUPERIOR COURT'S ADEQUATE CAUSE ORDER

The superior court entered an order denying the motion for an adequate cause

determination and dismissing the petition for de facto parentage. The superior court's order

included, in part, the following findings of fact and conclusions of law:

1.    [T.D.] has a founded finding for abusing the child. [T.D.] has failed to allege any facts which either acknowledge the abuse she inflicted upon the child or show that the abuse would not resume should the child be returned to her care.
. . . .
3.    [T.D.] has not provided sufficient facts to show that the fourth factor, being in a parental role for a length of time sufficient to have established a bonded, dependent, parental relationship with the child, can be met.
4.    The Petition for De Facto Parentage should not be viewed in a vacuum, and all of the relevant circumstances should be addressed, including the reasons for the child's removal from both his mother and [T.D.] and what has since taken place to address the issues that led to the removal.
5.    Assuming a committed and responsible role in a child's life does not include child abuse.
6.    There is not adequate cause to hold a full hearing or trial.
7.    Since adequate cause does not exist, the Petition for De Facto Parentage should be dismissed.

CP at 47.[2]

---

[2] On December 29, 2017, T.D. filed a motion for reconsideration of the superior court's order. She submitted additional documentation and evidence with her motion, including supplemental evidence to show that she made "mistakes and senseless choices in the past with my son." CP at 78. T.D. admitted to using excessive force for discipline and that it was wrong but that she had learned from her mistakes. T.D. also submitted additional evidence from professionals opining

D.     ORDER OF INDIGENCY

T.D. filed a motion for indigency, identifying the matter as a dependency action rather than a de facto parentage action.  On June 8, 2018, the superior court concluded that T.D. was entitled to counsel for review at the public expense and entered an order of indigency for T.D. to appeal its orders.

On August 22, 2018, after the Department filed a motion to vacate the indigency order, the superior court vacated the order of indigency, finding that T.D. did not meet any of the criteria listed in RAP 15.2 appointment of counsel.  "[T.D.] is not a legal parent to [T.D.D.] and therefore does not have a constitutional or statutory right to counsel on appeal at public expense."  Br. of App. Appx. at 45.

T.D. appeals.

---

that reunification with T.D.D. was appropriate.  On May 16, 2018, the superior court denied the motion for reconsideration.

ANALYSIS

A.    ADEQUATE CAUSE DETERMINATION[3]

T.D. argues that she is entitled to a trial on her petition for de facto parentage because "her pleadings outline facts which, if proved true, establish a prima facie case for de facto parentage." Br. of App. at 13.  We agree.

1.  Legal Principles

We review a superior court's adequate cause determination on a nonparental custody petition for an abuse of discretion.  *In re Custody of L.M.S.*, 187 Wn.2d 567, 574, 387 P.3d 707

---

[3]  RCW 26.09.270 states,

> A party seeking a temporary custody order or a temporary parenting plan or modification of a custody decree or parenting plan shall submit together with his or her motion, an affidavit setting forth facts supporting the requested order or modification and shall give notice, together with a copy of his or her affidavit, to other parties to the proceedings, who may file opposing affidavits. The court shall deny the motion unless it finds that adequate cause for hearing the motion is established by the affidavits, in which case it shall set a date for hearing on an order to show cause why the requested order or modification should not be granted.

In addition, RCW 26.10.032 states that

> (1) A party seeking a custody order shall submit, along with his or her motion, an affidavit declaring that the child is not in the physical custody of one of its parents or that neither parent is a suitable custodian and setting forth facts supporting the requested order. The party seeking custody shall give notice, along with a copy of the affidavit, to other parties to the proceedings, who may file opposing affidavits. (2) The court shall deny the motion unless it finds that adequate cause for hearing the motion is established by the affidavits, in which case it shall set a date for hearing on an order to show cause why the requested order should not be granted.

These statutes do not apply to de facto parentage petitions, and there is no court rule or statute that requires adequate cause determinations be made before a trial for de facto parentage. Because neither party disputes the adequate cause procedure, we do not address whether an adequate cause procedure is proper in a de facto parentage proceeding.

(2017). "A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons." *In re Marriage of Littlefield*, 133 Wn.2d 39, 46–47, 940 P.2d 1362 (1997). A court's decision is manifestly unreasonable if it is outside the range of acceptable choices considering the facts and applicable legal standard and it is based on untenable reasons if it applies an incorrect standard. *Littlefield*, 133 Wn.2d at 47.

The standard for demonstrating adequate cause in the context of nonparental custody petitions is "the nonparent petitioner must allege specific facts that, if proved true, would establish a prima facie case" of the elements. *L.M.S.*, 187 Wn.2d at 576. We adopt the same standard to de facto parentage petitions.

The elements for establishing de facto parentage are:

"(1) the natural or legal parent consented to and fostered the parent-like relationship, (2) the petitioner and the child lived together in the same household, (3) the petitioner assumed obligations of parenthood without expectation of financial compensation, and (4) the petitioner has been in a parental role for a length of time sufficient to have established with the child a bonded, dependent relationship, parental in nature."

*L.B.*, 155 Wn.2d at 708 (quoting *In re Parentage of L.B.*, 121 Wn. App. 460, 487, 89 P.3d 271 (2004)). Thus, to demonstrate adequate cause for de facto parentage petitions, the nonparent petitioner must allege specific facts that, if proved true, would establish a prima facie case on each of these elements. *L.M.S.*, 187 Wn.2d at 576; *L.B.*, 155 Wn.2d at 708.

2.       Adequate Cause Determination

T.D. notes, and the Department concedes, that only the fourth element required to establish de facto parentage—whether the petitioner has been in a parental role for a length of time sufficient to have established with the child a bonded, dependent relationship, parental in nature—is in

contention. T.D. argues that "the trial court applied the wrong legal standard by resolving disputed facts at the adequate cause stage and by considering factors beyond the four criteria outlined in *L.B.*" Br. of App. at 16. Specifically, T.D. argues that the court erred in considering the quality of the parent-child relationship at the adequate-cause stage rather than having the quality of the relationship be determined at a trial.

In making an adequate cause determination, the court is not determining whether or not the petitioner should be granted de facto parentage. Rather, the court is determining whether or not the threshold of adequate cause has been met to proceed to a full hearing. *See In re Custody of E.A.T.W.*, 168 Wn.2d 335, 342, 227 P.3d 1284 (2010). In doing so, courts "need not take every allegation at face value. Nonparent petitioners seeking custody of a child still must satisfy a burden of production to show adequate cause." *L.M.S.*, 187 Wn.2d at 582. They must present "sufficient facts" to establish the elements. *L.M.S.*, 187 Wn.2d at 571. An adequate cause determination may be based on opposing affidavits. *In re Parentage of Jannot*, 149 Wn.2d 123, 125, 65 P.3d 664 (2003).

In *In re Custody of A.F.J.*, the Supreme Court found that the petitioner had met the fourth element of de facto parentage when "A.F.J. had lived with Franklin for three and a half years. Johnston [the biological mother] herself acknowledged that A.F.J. called Franklin 'Mommy Mary' and calls Franklin's home his home. . . . A.F.J. and Franklin lived together long enough to establish a bonded, parent-child relationship." 179 Wn.2d 179, 189, 314 P.3d 373 (2013).

Here, T.D. submitted several declarations describing her bond with T.D.D. R.D., T.DD.'s legal mother, declared that T.D. always did the cooking for the two of them. T.D. helped T.D.D. with homework and other parenting tasks, like dropping him off at school and calming him down.

R.D. stated, "The bond I see between [T.D.] and [T.D.D.] is like any mother and son. The two of them are no different than how [T.D.D.] and I interact. He really did take to [T.D.] quickly and is very bonded with her." CP at 16. T.D. lived with T.D.D. for three and a half years. T.D.D. began calling her mom. Moreover, Eddy acknowledged that, prior to T.D.D.'s removal from the home, T.D. was T.D.D.'s primary caregiver. Thus, like in *A.F.J.*, sufficient evidence was presented to satisfy the burden making a prima facie showing of adequate cause.

The superior court found that a petition for de facto parentage "should not be viewed in a vacuum, and all the relevant circumstances should be addressed, including the reasons for the child's removal from both his mother and [T.D.] and what has since taken place to address the issues that led to removal." CP at 47. The court then proceeded to find no adequate cause "[a]ssuming a committed and responsible role in a child's life does not include child abuse." CP at 47. Rather than determining whether T.D. presented a prima facie case for de facto parentage entitling her to a trial on her petition, the court weighed the evidence and ruled on the petition itself. By determining the petition on its merits rather than determining if T.D. had presented a prima facie case supporting her motion for adequate cause determination, the court applied the wrong legal standard and abused its discretion. *Littlefield*, 133 Wn.2d at 47.

We hold that the superior court abused its discretion by misapplying the law when it relied solely on the finding of abuse and neglect in denying T.D.'s motion for an adequate cause determination. Therefore, we reverse the superior court's order denying adequate cause and remand for further proceedings.[4]

---

[4] Because we reverse and remand, we do not address the issue of whether a finding of abuse and neglect automatically defeats a prima facie case for de facto parentage.

B.      ORDER OF INDIGENCY

T.D. argues that the juvenile court erred by vacating the order of indigency.  She contends

that this case "involves the intersection of dependency/termination cases and other cases in which

parents have a constitutional or statutory right to counsel."  Br. of App. at 24.  Therefore, because

she is the child's de facto parent and because "the trial court proceedings effectively terminated

her relationship with her son, T.D. has a right to review at public expense."  Br. of App. at 24.

T.D. cites RAP 15.2(b)(1)(B) and (F) to support her argument.  Additionally, T.D. claims that had

her petition been granted, she would have been able to participate in the dependency and

termination proceedings.

> RAP 15.2(b)(1) states that the court
>
> shall grant the motion for an order of indigency if the party seeking public funds is
> unable by reason of poverty to pay for all or some of the expenses for appellate
> review of:
>> . . . .
>> (B) dependency and termination cases under RCW 13.34, . . . and
>> . . . .
>> (F) any other case in which the party has a constitutional or statutory right
> to counsel at all stages of the proceeding.

Here, T.D.'s argument incorrectly rests on the assumption that she is the de facto parent.

Even if the court had found adequate cause to go to trial, that determination would have not given

her status as a de facto parent.

Additionally, the granting of "concurrent jurisdiction" only allowed the court hearing the

dependency case to also hear the de facto parentage case.  CP at 9.  This does not mean that the de

facto parentage petition is now a dependency case.  Thus, this is not the type of case in which T.D.

12

No. 52042-7-II

would have a right to public expenses under RAP 15.2. We hold that the trial court did not err in vacating the order of indigency.

CONCLUSION

We reverse and remand to the juvenile court for further proceedings consistent with this opinion.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Maxa, C.J.

Melnick, J.

13