IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION  II

| | |
|---|---|
| In the Matter of the Custody of:<br><br>AMAYAH GRACE BARTUNEK,<br><br>BUDDY LEE BARTUNEK,<br><br>　　　　　　　　　Appellant,<br><br>　v.<br><br>JESSICA LEE BARTUNEK and ADAM LOUIS STATEN,<br><br>　　　　　　　　　Respondents. | No.  55069-5-II<br><br><br><br><br>UNPUBLISHED OPINION |

LEE, C.J. — B.B.[1] appeals the trial court's order granting his petition for nonparental custody of his granddaughter, A.B.  B.B. argues that the trial court erred by failing to find that A.B.'s biological father, Adam Staten, was unfit.  Also B.B. argues that the trial court erred by failing to find that Staten had abandoned A.B.  We hold that the trial court did not abuse its discretion in the nonparental custody order and affirm.

FACTS

A.B. is the child of J.B. and Staten.  Staten had regular communication and contact with A.B. the first year and a half of her life.  Staten also continued to contact J.B. by phone and

---

[1] This opinion refers to the parties that share the same last name with A.B. by their initials in order to protect the identity of the child.

messaging. Staten last saw A.B. when she was one and a half years old. Staten stayed out of A.B.'s life to respect J.B.'s wishes.

J.B. has a history of drug addiction. In February 2019, J.B. was hospitalized in the intensive care unit following a car accident. J.B.'s injuries resulted in some permanent disabilities affecting her vision, memory, and balance. And J.B. had various housing issues following her release from the hospital.

B.B. took care of A.B. while J.B. was in the hospital following her car accident. After J.B. was discharged, she began using methadone and disappearing for periods of time. Eventually, B.B. removed A.B. from J.B.'s care.

In June 2019, B.B. filed a petition for nonparental custody. B.B., J.B., and Staten testified to the above facts at trial.

The trial court entered written findings of fact and conclusions of law. The trial court found that neither J.B. nor Staten was a suitable custodian and that "[b]oth parents are **currently** unfit, or, even if they may be fit, the children will suffer actual detriment (harm) to their growth and development if they lived with either parent." Clerk's Papers (CP) at 104 (bolded in original). Specifically, the trial court found:

> Respondent [J.B.] is unfit to parent due to substance abuse, medical condition and lifestyle. She additionally substantially neglected the child.

> Respondent Adam Louis Staten is not a suitable custodial parent to the child at this time due to no contact with the child, and maybe traumatic and not in the best interest of the child.

CP at 104-05. The trial court found that B.B. should be A.B.'s primary custodian.

The trial court entered a final nonparental custody order which included visitation for both J.B. and Staten. In the residential schedule, the trial court found that Staten was not required to have residential time limited due to abandonment, neglect, child abuse, domestic violence, assault, or prior sex offenses. The trial court also entered child support orders for J.B. and Staten.

B.B. appeals.

## ANALYSIS

A.    LEGAL PRINCIPLES

We review a trial court's nonparental custody determination for an abuse of discretion. *In re Custody of L.M.S.*, 187 Wn.2d 567, 574, 387 P.3d 707 (2017). "A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons." *In re Custody of Halls*, 126 Wn. App. 599, 606, 109 P.3d 15 (2005). A decision is manifestly unreasonable if the decision is outside the range of acceptable choices based on the facts and applicable legal standard. *Id.*

A nonparent may petition for custody of a child. *In re Custody of Shields*, 157 Wn.2d 126, 137, 136 P.3d 117 (2006). To gain nonparental custody, the petitioner must establish that the parents are either "'unfit'" or that placing the child with a parent would lead to "'actual detriment to the child's growth and development.'" *L.M.S.*, 187 Wn.2d at 576 (quoting *In re Custody of E.A.T.W*, 168 Wn.2d 335, 338, 227 P.3d 1284 (2010)). The burden falls to the nonparent seeking custody to show unfitness or actual detriment. *Id*.

B.      UNFITNESS

B.B. argues that the trial court erred by failing to find that Staten was unfit.  We disagree.

"A parent is unfit if he or she cannot meet a child's basic needs."  *Id*.  Unfitness necessarily incorporates the standards for interference in the parent child relationship codified in RCW 26.44.010.  *See Id.*  Under RCW 26.44.010, interference in the parent child relationship is justified in "instances of nonaccidental injury, neglect, death, sexual abuse and cruelty . . . and in the instance where a child is deprived of his or her right to conditions of minimal nurture, health, and safety."

Here, the trial court found that J.B.'s substance abuse, medical condition, and lifestyle caused her to be an unfit parent.  This finding was based on J.B.'s current circumstances, not past conditions.  In contrast, there was no evidence that Staten was currently unfit to parent A.B.  The trial court found that Staten was not currently a suitable custodian for A.B. because he had not had contact with A.B.  The failure to have an established relationship with a child does not necessarily render a parent unable to meet a child's basic needs.  Because the trial court's finding was based on evaluating the current parenting abilities of Staten, the trial court did not abuse its discretion by failing to find that Staten was unfit.

To the extent that B.B. is arguing that the trial court failed to apply the law on unfitness equally to J.B. and Staten, this argument fails.  The trial court appears to have applied the law equally to both parties.  The trial court reached different result for each parent because their current circumstances were different.  Accordingly, the trial court applied the law equally to both J.B. and Staten.

C.      ABANDONMENT

B.B. also argues that the trial court erred by failing to find that Staten abandoned A.B.  We disagree.

A finding of past abandonment is not relevant to a determination in a nonparental custody petition.  To gain nonparental custody, the petitioner must establish that the parents are either "'unfit'" or that placing the child with a parent would lead to "'actual detriment to a child's growth and development.'"  *L.M.S.*, 187 Wn.2d at 576 (quoting *E.A.T.W.*, 168 Wn.2d at 338).

Here, even if Staten had previously abandoned the child, Staten responded to the petition.  The trial court acted within its discretion when it determined that Staten's past actions were not required to limit Staten's residential time.  And to resolve the nonparental custody petition, the trial court was only required to make findings on current unfitness or actual detriment, not make findings on whether Staten's past actions were abandonment.  Accordingly, the trial court did not abuse its discretion in failing to find that Staten abandoned A.B.[2]

---

[2] B.B. cites to various statutes and regulations that he argues show that Staten abandoned A.B. However, none of the authority cited by B.B. establishes that a finding of abandonment is relevant or necessary to a non-parental custody petition.  *See* RCW 13.34.030 (defining abandonment for the purposes of dependency and termination); RCW 26.09.191(2)(a) (limiting a parent's residential time in a parenting plan due to willful abandonment); former WAC 388-15-011 (2002) *recodified* as WAC 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 (Wash. St. Reg. 18-14-078) (defining child abandonment for the purposes of child protective services).  Additionally, it does not appear that RCW 26.05.010 exists. Accordingly, none of the authority cited by B.B. should change this court's opinion on whether the trial court abused its discretion by failing to find that Staten abandoned A.B.

No. 55069-5-II

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, C.J.

We concur:

Maxa, J.

Glasgow, J.