IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of Visits with Children L.P.J. and B.M.J.<br><br>GLENNA MUELLER,<br><br>                  Appellant,<br><br>        v.<br><br>MICHAEL JOHNSON,<br><br>                  Respondent. | No. 85481-0-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

BOWMAN, J. — Glenna Mueller appeals the trial court's dismissal of her petition for nonparental relative visitation for failing to show her minor grandchildren are likely to suffer harm or a substantial risk of harm if the court denied visitation. She argues that the trial court erred by dismissing her petition without an evidentiary hearing. We affirm.

## FACTS

L.J. and B.J. are the children of Katie Dyes and Michael Johnson. Dyes and Johnson shared custody of L.J. and B.J. subject to a parenting plan. Under the parenting plan, the children lived with Johnson from Tuesday to Friday and with Dyes at all other times. In January 2023, Dyes passed away. Johnson then assumed full custody of nine-year-old L.J. and seven-year-old B.J.

Mueller is the maternal grandmother of L.J. and B.J. In April 2023, Mueller petitioned under chapter 26.11 RCW for nonparental relative visitation with the children. Mueller requested visits with L.J. and B.J. "during the time that

their mother formally had the children" or "every other weekend, at the very least." She also requested holiday visitation.

Mueller asserted that she had an ongoing and substantial relationship with L.J. and B.J because she "cared for them on a daily basis for most of their lives." She explained that Dyes and the children lived with her "off and on for the past several years." She said that the children split their time between her and Johnson's homes, so they lived with her "every Thursday to Monday morning since mid-2022" and "from 2018 to 2020 as well." Mueller said that before Dyes' death, she was the children's primary care provider while Dyes was at work. Mueller asserted that the children were at substantial risk of harm without visitation because they "already lost their mother," and "[i]f they also lose their consistent relationship with [her], . . . they will experience additional trauma." She said that the children "need [her] for love and support and to make sure they have relationships with their maternal family."

Mueller filed a declaration with her petition. She asserted that in the three months since Dyes passed, she had "only been allowed to see the children on three different occasions" while Johnson was present. Mueller declared that such limited, supervised visitation will "change the nature of [her] relationship with [L.J.] and [B.J.]" in a "harmful" way:

> With the loss of their mother, the children experienced one of the greatest losses a human can endure. The children should not have to lose their relationship with their grandmother and their connection with their mother's side of the family too. They have aunts, uncles and cousins that all miss them very much.

Johnson objected to the petition.  In his response, Johnson said that he was the children's primary caregiver and disputed that the children lived with Mueller every Thursday to Monday.  Johnson also disagreed with Mueller's claim that the children would lose contact with her or her daughter's side of the family if the court did not order visitation because he arranges visits "with other family members, including [Mueller]."

On May 24, 2023, the court reviewed the petition.  It found that Johnson "has a constitutional right to parent his children" and that Mueller "failed to demonstrate [that] he is not a fit parent or that significant harm to the children would result from his decision to limit visits with [Mueller] to a supervised setting." It concluded that Mueller "has not shown that it is more likely than not that the *Petition for Visits* will be granted."  So, the court dismissed the petition without a hearing.

Mueller moved for reconsideration.  She argued the trial court erroneously required her to show that Johnson is unfit to parent before holding an evidentiary hearing.  The court denied reconsideration.  It clarified that it dismissed Mueller's petition because she "failed to establish a prima facie case that the children are 'likely to suffer harm' or [that] there is a 'risk of substantial harm' to the children if the petition is not granted."  It agreed that the children would benefit from maintaining a relationship with their mother's side of the family.  But it found that Johnson allows "contact and visits with the maternal relatives," so Mueller did not satisfy the harm element of RCW 26.11.040(3).

Mueller appeals.

ANALYSIS

Mueller argues that the trial court erred by dismissing her petition. We disagree.

We review a trial court's decision on a petition for nonparental visitation for an abuse of discretion. *In re Visits with R.V.*, 14 Wn. App. 2d 211, 220-21, 470 P.3d 531 (2020). " 'A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons.' " *Id.* at 221[1] (quoting *In re Custody of L.M.S.*, 187 Wn.2d 567, 574, 387 P.3d 707 (2017)). "A court acts on untenable grounds if the record does not support its factual findings, and it acts for untenable reasons if it uses 'an incorrect standard, or the facts do not meet the requirements of the correct standard.' " *In re Visits with A.S.A.*, 21 Wn. App. 2d 474, 481, 507 P.3d 28 (2022) (quoting *State v. Rundquist*, 79 Wn. App. 786, 793, 905 P.2d 922 (1995)).

Parents have a fundamental right to make decisions concerning the rearing of their children, including the right to decide on visitation with grandparents. *Troxel v. Granville*, 530 U.S. 57, 69-70, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000). Recognizing this fundamental right, chapter 26.11 RCW provides a narrow basis for nonparental relatives to petition for court-ordered visitation. *See R.V.*, 14 Wn. App. 2d at 218-19.

A party seeking nonparental visitation must petition the court, asserting that (1) the petitioner and child have an ongoing and substantial relationship, (2) the petitioner is a relative of the child, and (3) "[t]he child is likely to suffer harm or

---

[1] Internal quotation marks omitted.

a substantial risk of harm if visitation is denied." RCW 26.11.020(1), .030(6). The petitioner must also file a declaration setting forth " 'specific facts' " that establish visitation is warranted. *R.V.*, 14 Wn. App. 2d at 219 (quoting *In re Custody of E.A.T.W.*, 168 Wn.2d 335, 346, 227 P.3d 1284 (2010)); RCW 26.11.030(5), (6).

A trial court will hold an evidentiary hearing on the request for nonparental visitation if it finds from the petition and declaration that it is more likely than not that it will grant visitation. RCW 26.11.030(8). But if the petitioner does not meet this threshold showing, a "parent will not be subjected to an evidentiary hearing." *R.V.*, 14 Wn. App. 2d at 219; RCW 26.11.030(8). If the court determines an evidentiary hearing is not warranted, it will dismiss the petition. *See R.V.*, 14 Wn. App. 2d at 228; *A.S.A.*, 21 Wn. App. 2d at 481, 483.

If the court conducts a hearing, it starts with the presumption that " 'a fit parent's decision to deny visitation is in the best interest of the child and does not create a likelihood of harm or a substantial risk of harm to the child.' " *R.V.*, 14 Wn. App. 2d at 219 (quoting RCW 26.11.040(2)). A petitioner can rebut the presumption with clear and convincing evidence that " 'the child would likely suffer harm or the substantial risk of harm if visitation between the petitioner and the child were not granted.' " *A.S.A.*, 21 Wn. App. 2d at 481 (quoting RCW 26.11.040(3)). If the petitioner meets this burden of proof at a hearing, then the petitioner must establish by clear and convincing evidence that visitation is in the best interest of the child. RCW 26.11.040(4). If the petitioner meets both burdens of proof, then the court should grant visitation. RCW 26.11.040(1)(a).

Here, the court found that Mueller's petition and declaration "failed to demonstrate [that] [Johnson] is not a fit parent or that significant harm to the children would result from his decision to limit visits with [Mueller] to a supervised setting." It concluded Mueller failed to show "that it is more likely than not that the *Petition for Visits* will be granted" and dismissed her petition. Mueller argues the trial court erred because it required her to show that Johnson is an unfit parent before holding an evidentiary hearing, contrary to the statutory scheme. But Mueller misconstrues the court's ruling.

It is true that in its initial order, the trial court held that Mueller failed to show Johnson "is not a fit parent." But the court also determined Mueller failed to show that "significant harm to the children would result from his decision to limit visits with [Mueller] to a supervised setting." And on reconsideration, the trial court clarified that it dismissed Mueller's petition because she "failed to establish a prima facie case that the children are 'likely to suffer harm' or there is a 'risk of substantial harm' to the children if the petition is not granted," not because Mueller failed to show that Johnson is an unfit parent. The trial court applied the correct legal standard to determine the sufficiency of Mueller's petition.

Mueller argues that even if the trial court applied the correct standard, it erred by concluding that she failed to make a threshold showing of harm. Again, we disagree.

A petitioner seeking nonparental visitation must allege that the child will suffer substantial harm if the court does not grant visitation. RCW 26.11.030(5)(b); *see also* RCW 26.11.040(3). The petition should focus on the

relationship between the petitioner and the child and the harm that will come to the child if they are denied contact with the petitioner. *See A.S.A.*, 21 Wn. App. 2d at 482. That is, the petitioner must show that "continued contact with the nonparent is necessary to prevent the harm alleged" or that "the petitioner brings something unique to the child without which the child would suffer harm." *Id.*

Belief that visitation might better a child's quality of life does not justify state intervention. *In re Custody of Smith*, 137 Wn.2d 1, 20, 969 P.2d 21 (1998). Nor does the fact that lack of visitation may sever the child from half of their familial heritage. *R.V.*, 14 Wn. App. 2d at 225. While a child may benefit from a continuing relationship with their extended family members, a petitioner does not show harm merely by claiming that the child will lose such a benefit. *A.S.A.*, 21 Wn. App. 2d at 485 (Pennell, J., concurring). Still, our Supreme Court has recognized that when a child has enjoyed a substantial relationship with a third person, arbitrarily depriving the child of the relationship could cause them severe psychological harm. *Smith*, 137 Wn.2d at 20. That is not the case here.

Mueller alleges her grandchildren will suffer harm if the court does not grant her petition because "[t]he children have already lost their mother," and "if they also lose their consistent relationship with [her], . . . they will experience additional trauma." She also claims that "[t]he children need [her] . . . to make sure they have relationships with their maternal family." But Mueller agrees that Johnson has arranged visits and that she has seen the children several times. So, she fails to show that Johnson has arbitrarily deprived her of a relationship with her grandchildren. Mueller's belief that the children should have more

7

frequent contact or unsupervised visits with her does not warrant state intervention.

Citing a New Jersey case, *Moriarty v. Bradt*, 177 N.J. 84, 827 A.2d 203 (2003), Mueller argues that she satisfied her threshold burden to show harm. In *Moriarty*, grandparents petitioned for visitation with their daughter's children after her death. 177 N.J. at 90-91. The trial court granted visitation. *Id.* at 93. In doing so, the trial court recognized the importance of maintaining familial relationships after the death of a parent. *Id.* at 121. But, "most critical[ly]," it found that the grandparents showed harm based on substantial evidence that the father was seeking to alienate the grandparents because of his hostile relationship with them. *Id.* That evidence included expert testimony opining that without the requested visitation, "the alienation would succeed," and "the children would believe essentially that half of them, that their mother's half is evil, is damaged, is bad, and that this would cause self-esteem problems for the children since the children know that they're made up of their mother and their father." *Id.* The New Jersey Supreme Court affirmed the trial court, concluding that the record supported its finding of harm and that such a finding "overcame the presumption in favor of [the father]'s decision making." *Id.* at 122.

Mueller makes no effort to show that the New Jersey nonparental statutory scheme is similar to Washington's. Even so, this case is different from *Moriarity*. Mueller does not argue that Johnson is hostile to her or seeks to alienate her from her grandchildren. Instead, she alleges that Johnson has not offered her the type and frequency of visits that she desires.

8

The trial court did not abuse its discretion by dismissing Mueller's petition.

We affirm.

_Brennan, J_

WE CONCUR:

_Hazelrigg, A.C.J_          _Dwyer, J._